IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SISTER LASHON HARPER,

                   Plaintiff,

                                              Civ. Action No.
     v.                                    3:12-CV-0646 (NAM/DEP)

NEW YORK CHILD WELFARE
COMMISSIONERS, ADMINISTRATION
FOR CHILDRENS SERVICES,
BROOME COUNTY DEPARTMENT OF
SOCIAL SERVICES, and BROOME COUNTY
CHILD PROTECTIVE SERVICES,

                   Defendants.

_____

SISTER LASHON HARPER,

                   Plaintiff,

                                              Civ. Action No.
     v.                                    3:12-CV-0735
                                                (NAM/DEP)

JOHN DOES 1-10,

                   Defendants.

_____

1

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

SISTER LASHON HARPER
Plaintiff, *pro se*
3104 Buckingham Road
Endwell, New York 13760

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION AND ORDER

I.    BACKGROUND

Plaintiff Sister Lashon Harper, who is proceeding *pro se* and seeks

leave to proceed in this matter *in forma pauperis* ("IFP"), commenced the

first of these two actions in this district alleging a host of claims under

various statutes, as well as New York common law.  Dkt. Nos. 1, 2.

Plaintiff's claims appear to be related to the birth of her child on June 24,

2011, and charges of criminal neglect brought against her on July 28,

2011.  *See id.*  The facts surrounding these occurrences are not revealed

in the complaint.  In her complaint plaintiff generally demands injunctive

and declaratory relief and an award of damages in the amount of

$122,361,00.00.

The second of these actions was originally filed by plaintiff in the

Eastern District of New York, where she was granted leave to proceed IFP, and was just recently transferred to this district.  Though the legal claims made by the plaintiff in that action are not readily apparent, the facts alleged in her complaint appear to encompass those that are alleged in the first action.

 With regard to the first action, I have concluded that plaintiff's IFP application should be granted.  Because the two matters seem to be related, and perhaps duplicative, it appears that they should be consolidated.  Having afforded plaintiff the deference to which she is entitled as a *pro se* litigant and liberally construed her pleadings, however, I have nonetheless concluded that both lawsuits should be should be dismissed for failure to state a cause of action, with leave to replead.

II.   DISCUSSION

   A.   *In Forma Pauperis* Application

   As to plaintiff's *in forma pauperis* request, after a careful review of that application, the court finds that she qualifies for IFP status.  Plaintiff's request for permission to proceed *in forma pauperis* in the first action will therefore be granted.

   B.   Standard of Review

Since the court has found that plaintiff meets the financial criteria for commencing this case *in forma pauperis*, the court must consider the sufficiency of the allegations set forth in his pleading in light of 28 U.S.C. § 1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, the court has a gatekeeping responsibility to determine that a complaint may be properly maintained in this district before it may permit a plaintiff to proceed with an action *in forma pauperis*. *See id.*

In deciding whether a complaint states a colorable claim a court must extend a certain measure of deference towards *pro se* litigants,  *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (1983).  There is, nonetheless, an obligation on the part of the court to determine

4

that a claim is not frivolous before permitting a plaintiff to proceed.  *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (district court has power to dismiss case *sua sponte* for failure to state a claim).

"Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'"  *Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831 (1989) and *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[1]

When reviewing a complaint under section 1915(e), the court may

---

[1]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal

Rules of Civil Procedure provides that a pleading that sets forth a claim for

relief shall contain "a short and plain statement of the claim showing that

the pleader is entitled to relief [.]"  Fed.R.Civ.P. 8(a)(2).  The purpose of

Rule 8 "'is to give fair notice of the claim being asserted so as to permit the

adverse party the opportunity to file a responsive answer [and] prepare an

adequate defense.'"  *Hudson v. Artuz*, No. 95 CIV. 4768, 1998 WL 832708,

*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162

F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano*, 75 F.R.D. 497,

498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated

"enough facts to state a claim to relief that is plausible on its face."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974

(2007).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

662, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  Although the court

should construe the factual allegations in the light most favorable to the

plaintiff, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Id.*

"Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S.

at 555, 127 S. Ct.1955).  Thus, "where the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the

complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to

relief.'" *Id.* at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

> C.   Harper v. New York Child Welfare Administration
>      Commissioners, et al.

Plaintiff's complaint in the first action is essentially barren of any

allegations of fact.  She commenced this action utilizing a form provided by

the court for preparation of civil rights complaints pursuant to 42 U.S.C. §

1983.  In the section of the form designated "Statement of Claim", plaintiff

alleges

> violation of privacy act (5 U.S.C. § 552) June 24, 2011,
> aforesaid defendants illegally stole claimants newborn child
> from the hospital.  Charged claimant Sister Lashon Harper with
> derivative neglect of Serenity Ophelia Wright; also committed
> systematic crimes against claimant July 28, 2011; charged
> claimant with criminal mischief in the 3rd degree see complaint
> already on file case # 1:11-CV-0487-JG-LB.

*Harper v. New York Child Welfare Administration Commissioners, et al.*,

Civil Action No. 12-CV-646, Complaint (Dkt. No. 1).  This is the full extent

7

of facts alleged in plaintiff's complaint.[2]  The remainder of the complaint

merely identifies three defendants, states legal conclusions, and appears

to provide a litany of legal claims that plaintiff seeks to pursue.  Under the

facts section of the form complaint plaintiff states:

> New York governmental agencies have allowed the violations
> of claimant/plaintiff & childrens rights by under trained workers
> in the unnumberable [sic] fields in the department of mental
> health, the child welfare departments, lack of training in human
> services, the lack of knowledge in the rights of claimant &
> children, no service in the numerus [sic] agencies as aforesaid
> policy.

Complaint (Dkt. No. 1) Facts.  As a first cause of action, plaintiff states

"violation of N.Y.S. Constitution; violation of Civic Rights; violation of

Human Rights; Violation of Crime Victims Rights; intimidation."  *Id.*

Following the same style, for a second cause of action plaintiff alleges

"organized discrimination; sexual harassment; mail fraud; phone fraud;

extortion; slander; false arrests/false imprisonment; family deprivation;

violations of court orders; abuse of authority."  *Id.*  Finally, the third cause

of action contained in plaintiff's complaint states, "Judicial Misconduct;

Lawyer/attorney Misconduct; Lawyer/attorney malpractice; stalking; illegal

---

[2]        Attached to plaintiff's complaint is a copy of a docket sheet relating to the recently transferred action that plaintiff originally filed in the United States District Court for the Eastern District of New York, *Harper v. John Does 1-10*, Civ. Action No. 1:11-CV-04837-JG-LB (filed October 4, 2011).

harassment; judicial malpractice; parent alienation; kidnapping;

professional misconduct etals [sic]."³  *Id.*

Even when affording plaintiff the utmost of special leniency, to which

she is entitled as a *pro se* plaintiff, the court is unable to find even a single

plausible claim in her complaint.  Indeed, plaintiff's complaint, containing

little more than unsupported legal conclusions and a listing of legal

theories, does not even include "[t]hreadbare recitals of the elements of a

cause of action, supported by . . .conclusory statements", which the

Supreme Court in *Iqbal* made clear do not suffice under the liberal pleading

requirements of the Federal Rules of Civil Procedure.  As a result, it seems

clear that plaintiff's complaint should be dismissed on its face for failure to

state a plausible cause of action.  *See Suleharia v. New York*, No. 1:12-

CV-21, 2012 WL 1288760, at *7 (N.D.N.Y. Feb. 8, 2012) (Baxter, M.J.).

       1.    <u>Section 1983</u>

---

³     On April 18, 2011, plaintiff filed what appears to be a very similar complaint with the Eastern District of New York, *Harper v. Comptroller, et al.*, Civil Action No. 1:11-CV-01972-JG-LB.  In that lawsuit, plaintiff identified fifty-six separate defendants and alleged that three of her children were taken from her in August of 2006 without due process of law, and that she was falsely arrested on December 22, 2005.  By order dated December 14, 2011, plaintiff's complaint in that action, as amended, was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), with leave to replead. *See id.* at Dkt. No. 8.  Plaintiff's motion for reconsideration of the decision dismissing the action  was recently denied.  *See id.* at Dkt. No. 12.  Since that complaint was filed prior to the two occurrences alleged in the present action, at this time it does not appear that the two lawsuits arise out of the same facts and circumstances.

Insofar as plaintiff brings the first action pursuant to 42 U.S.C. §

1983, her complaint against the named defendants would fail for other

reasons as well.  "Section 1983 establishes a cause of action for 'the

deprivation of any rights, privileges, or immunities secured by the

Constitution and laws' of the United States."  *German v. Fed. Home Loan*

*Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v.*

*Virginia Hosp. Ass'n*, 496 U.S. 498, 508, 110 S. Ct. 2510, 2516 (1990)

(quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v.*

*Wollowitz*, No. 95-CV-0272, 1995 WL 236245, *2 (N.D.N.Y. Apr. 10, 1995)

(McAvoy, J.) ("§ 1983 is the vehicle by which individuals may seek redress

for alleged violations of their constitutional rights." (citation omitted)).  In

order to state a claim under section 1983, a plaintiff must allege that (1) the

challenged conduct was attributable, at least in part, to a person or entity

acting under color of state law, and (2) such conduct deprived the plaintiff

of a right, privilege, or immunity secured by the Constitution or laws of the

United States.  *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993);

*see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003)

(quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250 (1988)).

"Under New York law, a department of a municipal entity is merely a

subdivision of the municipality and has no separate legal existence.

Therefore, municipal departments like the Department of Social Services

are not amenable to suit and no claims lie directly against the Department."

*Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999)

(citations omitted).  Plaintiff's claims against the Broome County

Departments of Social and Child Protective Services should also be

dismissed on this basis.

    With regard to the Administration for Children's Services ("ACS"),

which appears to be an agency of New York City, the New York City

Charter provides that actions against any of its agencies must be brought

against the City of New York, except where otherwise provided.  *See*

*Harper v. Comptroller, et al.*, Civil Action No. 1:11-CV-01972-JG-LB,

Memorandum Decision and Order (Dkt. No. 3) at p. 4 (citing N.Y.C. Admin.

Code & Charter Ch. 16 § 396).  Accordingly, the ACS is not a proper

defendant and should be dismissed from the action.

    Turning to the New York Child Welfare Commissioners[4] and the

Mayor of the City of New York ("Mayor"), who are identified by title only,

_____

      [4]      Though far from clear, it appears that plaintiff intends to identify the
Commissioner of the New York City Administration for Children's Services
("Commissioner") as a defendant.

11

plaintiff is advised that personal involvement of defendants in the alleged

constitutional deprivations is a prerequisite to an award of damages under

section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing

*Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and

*McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434

U.S. 1087, 98 S. Ct. 1282 (1978)).  As the Supreme Court has noted, a

defendant may only be held accountable for his or her actions under

section 1983. *Iqbal*, 556 U.S. at 683, 129 S. Ct. at 1952.  In order to

prevail on a section 1983 cause of action against an individual, a plaintiff

must show some tangible connection between the constitutional violation

alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260,

263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely

by virtue of being a supervisor; there is no *respondeat superior* liability

under section 1983. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501. Culpability on the part of a supervisory

official for a civil rights violation can, however, be established in one of

several ways, including when that individual 1) has directly participated in

the challenged conduct; 2) after learning of the violation through a report or

12

appeal, has failed to remedy the wrong; 3) created or allowed to continue a

policy or custom under which unconstitutional practices occurred; 4) was

grossly negligent in managing the subordinates who caused the unlawful

event; or 5) failed to act on information indicating that unconstitutional acts

were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd*

*on other grounds sub nom.*, *Ashcroft v. Iqbal*, 556 U.S. 662,129 S. Ct.

1937 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58

F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.  Because plaintiff's

complaint fails to allege facts showing any personal involvement on the

part of the Commissioner of ACS or the Mayor in any alleged constitutional

violations, plaintiff's claims against them should be dismissed on this

additional basis.[5, 6, 7]

---

[5]    Though not named in the caption, in the body of her complaint plaintiff also references the New York State Mental Health Department.  The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity that states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in their official capacities when the essence of the claim involved is one against a state as the real party in interest.  *Richards v. State of New York Appellate Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89-91 102 S. Ct. 2325, 2328-2329 (1982)).  As a result, any claims alleged against the New York State Department of Mental Health are precluded by the doctrine of sovereign immunity.

[6]    The handwritten caption on plaintiff's pleading states plaintiff "Sister Lashon Harper & Children".  Plaintiff is advised that a party appearing as a litigant in a federal court must pursue claims either personally, or through counsel.  28 U.S.C. §

### E.    Harper v. John Does 1-10

Although the documents filed by plaintiff were not styled as a complaint, the Eastern District interpreted her submission as such and directed that it be filed as a complaint by plaintiff against ten "John Doe" defendants.  *See Harper v. John Does 1-10*, Civil Action No., 9:12-CV-0735, at Dkt. Entry of 10/6/11.  By order dated October 12, 2011, that court directed the transfer of the matter to this court.  To the extent that it can be interpreted as a pleading, the complaint in the second action also suffers fatal deficiencies.

---

1654; *see Berrios v. New York City Housing Authority*, 564 F.3d 130, 133 (2d Cir. 2009).  While under section 1654 a party is permitted to appear *pro se*, that authority is limited to a party prosecuting or defending against claims in his or her own right and "does not permit 'unlicensed . . . [persons] to represent anyone else other than themselves.'" *Id.* at 133 (citing and quoting *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007)); *see also Spickerman v. Carr*, No. 04-CV-6226P, 2004 WL 1529219, at *1 (W.D.N.Y. Jul. 7, 2004) ("To the extent that [the plaintiff] also has brought this claim on behalf of the minor children, however, he may not act as the children's representative in this action. He is not an attorney admitted to practice before this Court and therefore may not proceed on behalf of the minor children.") (citing cases).  Plaintiff therefore may not pursue any claims on behalf of her children without counsel.

[7]    Additionally, plaintiff generally alleges that defendants committed crimes against her. It is well-established that crimes are prosecuted by the government, not by private parties.  *See Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972).  Indeed, "it is axiomatic that a private citizen cannot bring a criminal complaint."  *Brown v. Seniuk*, No. 01 CV 1248, 2002 WL 32096576, *1 (E.D.N.Y. Mar. 25, 2002) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")).  As a result, to the extent that plaintiff's complaint alleges that defendants' violated of criminal laws, those claims should also be dismissed for lack of standing.

At the outset, the form of plaintiff's complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure, sets forth the general pleading requirements applicable to most complaints filed in the federal courts, and, as previously noted, requires that such a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a); *see In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 756 (S.D.N.Y. 2003).  Again, Rule 8 contemplates only notice pleading; under the rule's mandates, a complaint must apprise a defendant as to the nature of plaintiff's claims with sufficient clarity to allow that defendant to answer and prepare for trial.  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Federal Rule of Civil Procedure 10, which relates to the form of pleadings, imposes a requirement whose intent is largely pragmatic, and requires, that a pleading include a caption identifying the court and the parties and consist of separately numbered paragraphs, "each of which shall be limited as far as practicable to a statement of a single set of circumstances[.]"  Fed. R. Civ. P. 10(b).  Rule 10(b) is designed to assist litigants and the court by allowing the interposition of a responsive pleading

and the corresponding framing of issues with enough clarity to allow an orderly and meaningful presentation of a plaintiff's claims and any corresponding defenses, either on motion or at trial.  *See Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, S.J.).

The document that was originally filed with the Eastern District is actually in the form a letter to a judge sitting in that court.  It does not contain a caption, and nowhere does it identify the parties to the action, assuming it was plaintiff's intent to commence a lawsuit by the filing of that document.  Even more, the pleading filed in the second action, which consists of twenty-three handwritten pages plus an additional twenty-four pages of miscellaneous attachments, sets forth a rambling narrative of incidents involving plaintiff and agents or employees of various governmental agencies and/or facilities, including the New York State court system, the Broome County Correctional Facility, the New York State Department of Mental Health, and Broome County Social Services, from April 2011 - September 2011, including the only two events referenced in the first action – certain criminal charges brought against her on July 28, 2011, and the birth of her daughter, on June 24, 2011, who is apparently in foster care.  The second complaint is not organized in any coherent

16

fashion, does not discuss the allege occurrences in chronological or any other semblance of order, and does not include separately number paragraphs, but instead rambles on about plaintiff's tribulations with the criminal justice and child welfare systems in New York without any semblance of order or any discernable goal.  In contrast to the complaint in the first action, the complaint in the second consists solely of allegations of fact, and the claims she is pursuing and/or relief she is requesting are not stated.

While it is well recognized that *pro se* litigants are entitled to deference, it is also firmly established that *sua sponte* dismissal of a *pro se* pleading is appropriate where it is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42.  Indeed, in this case, "neither the defendants nor the court should be required to expend the time, effort and resources necessary to parse through plaintiff's pleading in order to determine what claims, if any, plaintiff has alleged."  *Ceparano v. Suffolk Cnty.*, No. 10-CV-2030, 2010 WL 5437212, at *4 (E.D.N.Y. Dec. 15, 2010).  The fact that plaintiff has not identified any defendants but has named many individuals during the course of her narrative poses separate problems; it is unclear

who, if anyone, plaintiff intends to sue, and there is no one upon whom service can be effected.  Because plaintiff's complaint in the second lawsuit also falls far short of even the liberal pleading requirements of Rules 8 and 10, I recommend its dismissal.  *See Powell v. Harris*, No. 1:08-CV-344, 2008 WL 4279494 (N.D.N.Y. May 14, 2008) (Treece, M.J.); *Bell v. Lasaceli*, No. 08-CV-0278A, 2009 WL 1032857 (W.D.N.Y. Apr. 15, 2009).

III.    NATURE OF DISMISSAL

Ordinarily, a court should not dismiss a complaint filed by a  *pro se* litigant without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991) (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).

In affording deference to plaintiff as a *pro se* litigant, at this early juncture I cannot conclude with certainty that she has no cognizable cause

18

of action.  Accordingly, in the event that my recommendation is adopted and plaintiff's complaints are dismissed, I further recommend that plaintiff be permitted leave to file an amended complaint.

In this regard, plaintiff is advised that the law in this circuit clearly provides that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning."  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (other citations omitted)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 U.S. Dist. LEXIS 7136, at *24-25 (N.D.N.Y. May 22, 1995) (Pooler, D.J.) (citation omitted).  In any amended complaint, if plaintiff is given leave and so chooses to file one, plaintiff therefore must clearly set forth the facts, including the wrongful acts that give rise to the claim, the dates, times and places of the alleged acts, and each individual(s) who committed each alleged wrongful act.  Such an amended complaint must replace the existing pleading, must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court, *see Harris v. City of N.Y.*, 186 F.3d 243, 249

19

(2d Cir. 1999) (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); Fed. R. Civ. P. 10(a), and should specifically allege facts indicating the involvement of each of the named defendants in the constitutional deprivations alleged in sufficient detail to establish the they were tangibly connected to those deprivations.  *See Bass,* 790 F.2d at 263.

IV.    CONCLUSION

Plaintiff's skeletal complaint in the first action, consisting of no more than unsupported legal conclusions and an outline of legal theories, is patently insufficient to state plausible civil rights violations.  In stark contrast, her twenty-three page complaint in the second action consists only of a rambling and incoherent narrative of events occurring over a six-month period, which may or may not be related, and fails to identify a single defendant, or reference any legal basis for that action.  For all of the foregoing reasons, both complaints should be dismissed pursuant to section 1915(e)(2)(B) for failure to state a cause of action and as frivolous, with leave to replead section 1983 claims on plaintiff's own behalf.

Accordingly, it is hereby respectfully,

RECOMMENDED that those two actions, *Harper v. New York Child Welfare Administration*, No. 3:12-CV-0646 and *Harper v. John Does 1-10*,

No. 3:12-CV-0735, be consolidated, and that plaintiff's complaints in both be dismissed in their entirety with leave to file an amended complaint as to section 1983 claims asserted on her own behalf within thirty days of any decision adopting my recommendation in full, and in the event that plaintiff fails to do so, that the action be dismissed without any further action by the court .

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that plaintiff's application to proceed *in forma pauperis* (*Harper v. New York Child Welfare Administration*, No. 3:12-CV-0646, Dkt. No. 2) be GRANTED; and it is further,

ORDERED that the clerk of the court serve a copy of this report, recommendation, and order upon the plaintiff in accordance with this court's local rules.

Dated:      May 14, 2012

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))



Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.
Nos. 3:99–MC–304 (EBB); 3:99–MC–408 (EBB).

Nov. 8, 1999.
*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

**\*1** Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000.[FN1]

> FN1. *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At*

*2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A. *§ 1915(e)(2)(B) Standards*

**\*2** The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (quoting *Neitzke,* 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes

and citation omitted); *see also Tapia–Ortiz v. Winter,* 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." *Tapia–Ortiz,* 185 F.3d at 11.

2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also Star v. Burlington Police Dep't,* 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii) of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." *Denton v. Hernandez,* 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii) ], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Gomez v. USAA Federal Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because "the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See* *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See* *United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker Farms Rd.,* 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures—i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5** Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 21 U.S.C. § 881(b) (authorizing sale of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

is liable to perish or to waste or to be greatly reduced in value by keeping, or that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546)]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito,* 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

(Cite as: 1999 WL 1067841 (D.Conn.))

excessive or disproportionate").

**\*6** Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant." *194 Quaker Farms Rd.*, 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable. *See* 28 U.S.C. § 2680(h); *see also Bernard v. United States*, 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see Gomez*, 171 F.3d at 796,

these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

D.Conn.,1999.

Aguilar v. U.S.
Not Reported in F.Supp.2d, 1999 WL 1067841 (D.Conn.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,
v.
Christopher ARTUZ, Warden Philip Coombe,
Commissioner Sergeant Ambrosino Doctor Manion
Defendants.
No. 95 CIV. 4768(JSR).

Nov. 30, 1998.

Mr. Theodore Hudson, Great Meadow Correctional Facility, Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's complaint alleges defendants violated his constitutional rights while he was an inmate at Green Haven Correctional Facility.[FN1] Plaintiff's complaint was dismissed *sua sponte* by Judge Thomas P. Griesa on June 26, 1995 pursuant to 28 U.S.C. § 1915(d). On September 26, 1995, the Second Circuit Court of Appeals vacated the judgment and remanded the case to the district court for further proceedings.

    FN1. Plaintiff is presently incarcerated at Sullivan Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on January 31, 1996. Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c) on November 25, 1996. Thereafter, the case was reassigned to Judge Jed S. Rakoff on February 26, 1997. On February 26, 1998, Judge Rakoff granted defendants' motion to dismiss, but vacated the judgment on April 10, 1998 in response to plaintiff's motion for reconsideration in which plaintiff

claimed that he never received defendants' motion to dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case was referred to me for general pretrial purposes and for a Report and Recommendation on any dispositive motion. Presently pending is defendants' renewed motion to dismiss. Plaintiff filed a reply on July 6, 1998. For the reasons discussed below, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this order.

FACTS

Plaintiff alleges that he was assaulted by four inmates in the Green Haven Correctional Facility mess hall on March 14, 1995. (Complaint at 4.) He alleges that he was struck with a pipe and a fork while in the "pop room" between 6:00 p.m. and 6:30 p.m. (Complaint at 4–5.) Plaintiff contends that the attack left him with 11 stitches in his head, chronic headaches, nightmares, and pain in his arm, shoulder, and back. (*Id.*) Plaintiff also states that Sergeant Ambrosino "failed to secure [the] area and separate" him from his attackers. (Reply at 5.) Plaintiff's claim against Warden Artuz is that he "fail [sic] to qualify as warden." (Complaint at 4.) Plaintiff names Commissioner Coombes as a defendant, alleging Coombes "fail [sic] to appoint a qualified warden over security." (Amended Complaint at 5.) Plaintiff further alleges that Dr. Manion refused to give him pain medication. (Complaint at 5.) Plaintiff seeks to "prevent violent crimes" and demands $6,000,000 in damages. (Amended Complaint at 5.)

Defendants moved to dismiss the complaint, arguing that: (1) the Eleventh Amendment bars suit against state defendants for money damages; (2) the plaintiff's allegations fail to state a claim for a constitutional violation; (3) the defendants are qualifiedly immune from damages; and (4) plaintiff must exhaust his administrative remedies before bringing this suit.

DISCUSSION

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

I find that plaintiff's complaint runs afoul of Rules 8 and 10 of the Federal Rules of Civil Procedure and dismiss the complaint without prejudice and with leave to amend. Federal Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting Brown v. Califano, 75 F.R.D. 497, 498 (D.C.1977)); see Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

*2 Rule 10 of the Federal Rules of Civil Procedure requires, inter alia, that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. Moore's Federal Practice, Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. Id.FN2 The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." Sandler v. Capanna, 92 Civ. 4838, 1992 WL 392597, *3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1323 at 735 (1990)).

FN2. Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. Id.; see also Salahuddin v. Cuomo, 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. In those cases in which the court dismisses a pro se complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v.. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a pro se litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. See Salahuddin, 861 F.2d at 42–42; see also Doe v. City of New York, No. 97 Civ. 420, 1997 WL 124214, at *2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's pro se complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)

(Cite as: 1998 WL 832708 (S.D.N.Y.))

muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

S.D.N.Y.,1998.

Hudson v. Artuz
Not Reported in F.Supp.2d, 1998 WL 832708 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Iqbal N. SULEHRIA, Plaintiff,
v.
The State of NEW YORK, et al., Defendants.
No. 1:12–CV–21 (LEK/ATB).

Feb. 8, 2012.
Iqbal N. Sulehria, pro se.

**REPORT and RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge.

**\*1** The Clerk has sent to the Court for review a complaint, together with an application to proceed *in forma pauperis* (IFP) (Dkt. No. 2), submitted for filing by *pro se* plaintiff Iqbal N. Sulehria. Plaintiff brings this action for employment discrimination pursuant to a myriad of statutes and constitutional provisions which will be discussed below. (Compl.; Dkt. No. 1). Plaintiff seeks, *inter alia,* one hundred million dollars in compensatory damages, a nullification of "all of the illegal appointments of unknown individuals who were hired without ... merit," the establishment of an independent commission to monitor the defendants' conduct, and a judgment for criminal penalties against the defendants. (Compl. at 31–32).[FN1]

> FN1. Plaintiff has numbered the pages of his complaint and has also numbered most of the paragraphs. The page numbers that plaintiff has assigned match the numbers assigned by the court's electronic case management system (CM/ECF). In this Report–Recommendation, the court will refer to either the pages of the complaint or to the paragraph numbers assigned by plaintiff as appropriate.

**I.** *In Forma Pauperis* **("IFP") Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). Plaintiff states that he has been unemployed for almost one year, he currently resides with his parents, and has no other property or bank accounts. (Dkt. No. 2 at 2). Plaintiff also states that he owes a substantial amount of money in "Education Loans and other debts." (*Id.*) Plaintiff has attached some documentation regarding these alleged outstanding loans. (*Id.* at 3–5). Although the amount shown in plaintiff's exhibits is actually less than the amount that plaintiff claims that he owes, this court will find for purposes of this recommendation, that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir.1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir.2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

**\*2** To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.** *Complaint*

Plaintiff claims that after the "cataclysmic events of September 11, 2001 a stygian pall of paranoia, enemity [sic], hostility and illegal discrimination began to permeate the hiring environment in the state of New York and its departments." (Compl.¶ 7). Based upon this statement, plaintiff alleges that Pakistanis and those who "appeared to be of Muslim descent were subjected to unlawful discrimination and unlawful retaliation." *Id.* Plaintiff claims that because of this anti-Muslim sentiment, and notwithstanding his excellent credentials, he was systematically and unlawfully denied jobs by "N.Y.S. State, its entities, and its employees." *Id.*

Plaintiff alleges that on approximately September 2, 2010, he applied for six different New York State civil service jobs.[FN2] (Compl.¶ 13). Plaintiff claims that he was not allowed to take the written tests for these positions. (Compl.¶¶ 14–19). Plaintiff then states that he believes that the State gave preference to Christian, white, Black, female and under–40 candidates, even though these individuals did not meet the hiring criteria. (Compl.¶ 20). Plaintiff states that he has an LL.M degree and therefore, was better qualified than the other individuals who applied for the jobs in question. (Compl.¶ 46). Plaintiff makes the sweeping claim that this "selective treatment" was based on "age, color, gender, religion, national origin, ethnicity, creed, and sexual orientation." (Compl.¶ 22). Plaintiff alleges a myriad of additional unsupported conclusions, including that he was subjected to a "hostile work environment." (Compl.¶ 22). Plaintiff further claims that the defendants have a policy and practice of failing to train and supervise their employees with respect to discrimination, harassment, and retaliation. (Compl.¶ 24).

FN2. (1) Employment specialist for individuals with disabilities 1; (2) Supervisor of Correctional Facility Volunteer Services; (3) Labor Services Representative Trainee 1; (4) Human Rights Specialist 1; (5) Correction Officer Trainee; and (6) Public Work Wage Investigator. (Compl.¶ 13).

In addition to disparate treatment and "a Hostile Working Environment," plaintiff states that the "terms and conditions of [plaintiff's] potential employment were materially altered by defendant's [sic] conduct." (Compl.¶¶ 27, 30, 47). Plaintiff accuses the defendants of "employing criminal acts," including conspiracies, verbal assaults, and aggravated harassment." (Compl.¶ 52). He also states that none of the defendants "ever made any attempt to provide the plaintiff with the medical attention made necessary by the above defendants' conduct." (Compl.¶ 53). Plaintiff alleges that the defendants did not properly investigate his allegations of discrimination and failed to take corrective action against those individuals who were engaged in the inappropriate conduct. (Compl.¶¶ 57, 58). In fact, plaintiff alleges that the defendants were not properly tested for their "psychological well-being ... and brain related problems ... including but not limited to battered spouse's syndrome ... etc." *Id.* He may be attempting to state a claim for wrongful or negligent hiring of the defendants. (Compl.¶ 59). Plaintiff also accuses the defendants of being "chronic alcohol abusers." (Compl.¶ 40).

**\*3** The complaint contains fifty six causes of action, including violations of 42 U.S.C. §§ 1981, 1983, 1985, 1988, Title VI, Title VII, Title IX, NYS Human Rights Law, New York City Administrative Code, "the Theory of Pattern and Practice," disparate treatment/impact, negligent hiring and/or retention, negligent infliction of emotional distress, breach of implied covenant of good faith and fair dealing, unjust enrichment, fraud, false representations, Age Discrimination, National Labor Relations Act, 29 U.S.C. § 157–58, The Immigration and Nationality Reform and Control Act of 1986, excessive force, failure to intercede, abuse of authority, whistleblower claims under N.Y. Civil Service Law § 75–b(2)(a) and N.Y. Labor Law § 740, Section 504 of the Rehabilitation Act, tortious interference with economic

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

opportunity, invasion of privacy, "a taking claim," aggravated harassment, various constitutional violations, Mental Hygiene Law § 19.01, and "other related claims." *Id.*

### III. *Random Statutes*

The complaint lists so many statutory provisions as the bases for plaintiff's claims that the complaint is very difficult to decipher. The court will first attempt to pare down the random statutes that have absolutely nothing to do with plaintiff's claims. I will focus on the listing of bases in the section of the complaint entitled **"I. Introduction."** (Compl. ¶ 1).

### A. Fair Labor Standards

In his introductory paragraph, plaintiff cites the "Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, 207." Neither of these sections has any bearing on the facts stated in plaintiff's claims of discrimination. Section 201 is the "Short Title" of the Act and contains no other provisions. Section 207 is entitled "Maximum Hours," and provides that certain employees shall not be employed for a workweek that is longer than forty hours "[e]xcept as otherwise provided in this section." 29 U.S.C. § 207(a).

Other subsections of the FLSA involve compensation rates, grants, stock options and other issues related to hours of work and type of industry. *Id.* § 207(a)-(n). One subsection refers to "compensatory time," another refers to hours worked by public employees in fire protection, or law enforcement, and another section involves public employees who work part-time *Id.* § 207(o)-(p). The section also provides for exemptions for individuals who are receiving remedial education and provides for "reasonable break time." *Id.* ¶ 207(q)-(r). Plaintiff cites no facts in his complaint that would even remotely state a claim under the above cited sections of the FLSA. Thus, plaintiff may not bring this action pursuant to the cited sections of the Fair Labor Standards Act.

### B. The "Immigration and National [sic] Act as Amended by the Immigration Reform and Control Act of 1986"

The court assumes that plaintiff is referring to the Immigration and Nationality Act, as amended by the Immigration Reform and Control Act of 1986. However,

plaintiff does not cite any particular section of the statute, and the court can only guess at what he may be trying to raise by citing this statute. The Act makes it unlawful to employ "unauthorized aliens." 8 U.S.C. § 1324a. There are cases citing this Act and discussing the inability to hire illegal aliens or award them back pay. *See, e.g., Hoffman Plastic Compounds, Inc. v. N.L.R.B.,* 535 U.S. 137, 140, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002).

**\*4** In *Chamber of Commerce of United States v. Whiting,* Justice Sotomayor stated in her dissenting opinion that "[i]n enacting the Immigration Reform and Control Act of 1986 (IRCA), ... Congress created a 'comprehensive scheme prohibiting the employment of illegal aliens in the United States.' " *Chamber of Commerce of United States v. Whiting,* —— U.S. ——, ——, 131 S.Ct. 1968, 1998, 179 L.Ed.2d 1031 (2011) (Sotomayor) (Dissenting); *N.L.R.B. v. Domsey Trading Corp.,* 636 F.3d 33, 35 n. 3 (2d Cir.2011) (the IRCA made it illegal to knowingly hire undocumented immigrants and required employers to verify the immigration status of newly-hired employees). However, this plaintiff's allegations have nothing to do with illegal aliens or back pay, and the citation of this statute as a basis for his claims is frivolous.

### C. The Equal Pay Act of 1963 (EPA)

Again, plaintiff cites no specific section of this statute, and in general, the EPA prohibits employers from discriminating among employees on the basis of sex by paying different wages for equal work, performed under similar working conditions. *See Trumble v. County of Oswego,* No. 5:11–CV–462, 2012 WL 39636, at *5 (N.D.N.Y. Jan.6, 2012) (citing 29 U.S.C. § 209(d)(1)). The elements of a case under the EPA require that an employer pay different wages to employees of the opposite sex; the employees perform equal jobs requiring equal skills and responsibilities; and the jobs are performed under similar working conditions. *Id.* (citing *inter alia LavinMcEleney v. Marist College,* 239 F.3d 476, 479 (2d Cir.2001)).

Plaintiff in this case claims that he was not allowed to sit for civil service examinations. He was never employed by New York State in the jobs for which he was attempting to take the test; thus, plaintiff does not and cannot claim that an employee of the opposite sex was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

paid more than he was for equal work. Plaintiff's citation of this statute as a basis for his claims is frivolous.

**D. National Labor Relations Act §§ 7, 8**

Plaintiff cites 29 U.S.C. §§ 157, 158(a)(1). Section 157 provides for the right of employees to organize and to engage in collective bargaining. Section 158(a)(1) provides that it shall be an "unfair labor practice" for an employer to interfere with, restrain or coerce employees in the exercise of the right to organize and engage in collective bargaining. Neither section applies in any way to plaintiff's claims, and thus, plaintiff's complaint may be dismissed to the extent that he purports to raise claims under this statute.

**E. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.**

In order to make out a prima facie case of disability discrimination, the plaintiff must show that (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without accommodation; and (4) he was subject to an adverse employment action because of the disability. *Reeves v. Johnson Controls World Services, Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998). An individual may state a claim under the ADA even without an impairment, as long as the plaintiff is regarded as having an impairment that qualifies under the ADA. *Francis v. City of Meridian,* 129 F.3d 281, 284 (2d Cir.1997). To be regarded as having a disability, the plaintiff must show that he is regarded as having an impairment that substantially limits one or more major life activities. *Id.* at 285.

*5 The Rehabilitation Act provides protection from discrimination, similar to the protection afforded by the ADA, for individuals with disabilities by a program or activity receiving Federal assistance. The standard under the Rehabilitation Act is, with a minor difference that is not relevant here, the same as under the ADA. *See Rodriguez v. City of New York,* 197 F.3d 611, 618 (2d Cir.1999).

Plaintiff states that he was not allowed to take civil service examinations based upon discrimination that began due to the events of September 11, 2001. Nowhere in the complaint does he allege that he has a disability or that he is perceived as having a disability sufficient to state a claim under either the ADA [FN3] or the Rehabilitation Act. Any claims that plaintiff purports to bring under these statutes may be dismissed.

> FN3. The ADA does have a section protecting plaintiffs from a discriminatory failure to hire. 42 U.S.C. § 12112(a). No covered entity may discriminate against a qualified individual *"on the basis of disability"* in regard to job application procedures and hiring. *Id.* (emphasis added). However, this plaintiff does not state that he has a disability; thus, there is no protection for him under this statute.

**F. Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1661–88**

Plaintiff's complaint also mentions Title IX. Title IX prohibits gender discrimination by educational programs, including schools, or other activities receiving Federal assistance. As stated above, plaintiff only states that he was denied the right to sit for civil service examinations because he is Pakistani or Muslim. There is no indication that he was prevented from taking these examinations because he was a man,[FN4] and there is no indication that any of these examinations involved educational programs or activities involving Federal assistance within the meaning of Title IX. Thus, any claim under Title IX may be dismissed for failure to state a claim and as frivolous.

> FN4. In one sentence, plaintiff states that it is his belief that other individuals, including "female[s]" were systematically hired by the State of New York, but the sentence is completely conclusory. (Compl.¶ 20).

**G. Remaining Statutes**

The remaining statutes upon which plaintiff bases his claims are: 42 U.S.C. §§ 1981, 1983, 1985, 1988, 2000d (Title VI), and 2000e (Title VII). Plaintiff also cites the Federal and State constitutions as well as a variety of New York State Statutes: New York State Executive Law §§ 290, 296, General Municipal Law § 205–e, Title 8 of the New York City [FN5] Administrative Code, §§ 8–107(1)(a), (13)(b), New York General Business Law § 349, New

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

York Labor Law § 740. The court will discuss the New York State statutes at the end of this Report when supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) is discussed.

> FN5. The court assumes that plaintiff is citing the New York City Administrative Code because he was apparently attempting to take the examinations in New York City, although this is unclear. The court's assumption is based upon plaintiff's documents indicating that he listed a Brooklyn address when he brought his Equal Opportunity Employment Commission (EEOC) complaint in this case. (*See* Compl. Ex. A at 4 (EEOC letter to plaintiff, listing Brooklyn address), 6 (plaintiff's EEOC charge of discrimination, listing plaintiff's Brooklyn address)).

#### IV. *Individual Named Defendants*

Plaintiff names five individual defendants.[FN6] Four of the five are named "individually" and as "Representatives" of the New York State Department of Civil Service: Lindsay Shea Childrose, Diane M. Sisario, Ivan Coello, and Freddie Burns.[FN7] The fifth individual defendant is named "individually" and as "Senior Personnel" of the New York State Department of Labor: Cathy Emmerick.

> FN6. Plaintiff also names "John and Jane Doe" defendants 1–50.

> FN7. The court notes that plaintiff names "Eric Scheniderman, as Attorney General in his official capacity." (Compl. at 1). An action against state officers in their "official" capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 87 & n. 1 (2d Cir.1991). If plaintiff had named the Attorney General in his individual capacity, he could not bring a Title VI or Title VI action against him. The court will assume, however, that plaintiff intended only to bring official capacity claims against this defendant.

Individuals are not subject to liability under Title VII; thus, to the extent that plaintiff raises Title VI or Title VII claims (including any retaliation claims), they may not be brought against the individual defendants. *Sassaman v.*

*Gamache,* 566 F.3d 307, 315–16 (2d Cir.2009) (quoting *Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir.2004)). The only federal claims available against the individuals are claims under section 1981,[FN8] 1983,[FN9] and 1985.[FN10]

> FN8. Section 1981 provides in relevant part, that all persons within the jurisdiction of the United States shall have equal rights to make and enforce contracts, to sue and be sued, to give evidence, and to the full benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens. 42 U.S.C. § 1981(a).

> FN9. Section 1983 provides a cause of action for individuals who have had their constitutional or federal rights violated by a defendant acting under color of state law. 42 U.S.C. § 1983. Unlike section 1981, section 1983 is based upon an underlying violation of a constitutional right and does not provide a right of action in itself.

> FN10. To establish a claim under section 1985(3), plaintiff must establish a racial or class-based conspiracy to deprive a person or class of persons of equal protection of the laws. *Id.* Plaintiff must also establish an act done in furtherance of the conspiracy, and he must establish that he was injured in his person or property as a result. *Id.* Plaintiff also cites 42 U.S.C. § 1988 as a "basis" for his claims. However, 42 U.S.C. § 1988 is not a separate basis for jurisdiction. Section 1988 provides for the applicability of certain laws and provides for attorneys fees for prevailing parties in the enforcement of other sections of the civil rights laws. 42 U.S.C. § 1988(a)-(c). The court will only consider claims under statutes that could support a basis for plaintiff's claims.

**\*6** Section 1981, 1983, and 1985 claims may not be brought against New York State, State agencies, or state actors in their "official capacities." *Concey v. New York State Unified Court System,* 2011 WL 4549386, at \*7 (S.D.N.Y. Sept.30, 2011) (citations omitted). Claims

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

against these defendants in their "official capacity," or claims against the State, the Department of Civil Service, and the Department of Labor would be precluded by the Eleventh Amendment. Thus, any section 1981, 1983, and 1985 claims may be dismissed as against defendants in their "official capacities," and any claims under these statutes against the Civil Service Department, the Department of Labor, and Eric Schneiderman, as the Attorney General of New York must be dismissed as barred by the Eleventh Amendment.

To the extent that the named defendants may be sued in their individual capacities, these statutes require that plaintiff demonstrate defendants' personal involvement in the alleged constitutional violation. *Kantrowitz v. Uniondale Union Free School Dist.,* No. 08–CV–3592, 2011 WL 4593147, at *17 (E.D.N.Y. Sept. 30, 2011) (discussing both section 1983 and 1981) (citing *inter alia Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987)). The personal involvement requirement also applies to conspiracy claims under section 1985, *Keitt v. New York City,* No. 09 Civ. 8508, 2011 WL 4526147, at *3 (S.D.N.Y. Sept.29, 2011).

In this case, although plaintiff lists all the above individuals in the caption of the complaint, plaintiff never alleges how *any* of them were personally involved in keeping him from taking the examinations that he wished to take. It is well-established that conclusory allegations are insufficient to establish a cause of action under the civil rights laws. *See Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Mazurek v. Wolcott Bd. of Educ.,* 815 F.Supp. 71, 77 (D.Conn.1993) (citations omitted). Plaintiff's complaint in this case is nothing but conclusory allegations.

To the extent that these individuals are supervisory officials,[FN11] respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). In *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

FN11. The complaint seems to imply that these defendants are supervisory officials. In paragraph 57, plaintiff states that "the above defendant Supervisors and policy makers failed to take any proper and statutory action whatsoever against above named John does and Jane Does defendants who acted in a criminal manner and committed crimes under color of the law."

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

**\*7** There is no indication that any of these individuals created a discriminatory custom or policy or that they were aware of plaintiff's attempts to take these examinations. According to the complaint, all defendants reside and have their offices in Albany, New York. (Compl.¶ 12(i)-(v)). It is unclear where plaintiff attempted to take the examinations, but these supervisory officials are not alleged to have been present at the testing sites, and plaintiff never describes how, or by whom, he was refused access to the tests. Instead, plaintiff claims that the supervisors failed to appropriately test the other John Doe defendants for mental and brain-related problems. (Compl.¶ 57). Plaintiff has failed to state sufficient personal involvement of these named supervisory defendants to state a plausible claim against them. The defendants are all random individuals, and nowhere does

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

plaintiff allege how they could or would have conspired under section 1985 to violate his constitutional rights. Complaints relying on civil rights statutes must contain some specific allegations of fact indicating a deprivation of rights, instead of a "litany of general conclusions that shock but have no meaning." *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995) (citing *inter alia Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). A careful review of plaintiff's complaint shows that plaintiff's claims are all based on his conclusory speculation that he is being discriminated against because of September 11, 2001, and because he is Pakistani. Plaintiff cites absolutely no basis for his conclusions. Thus, any claims against these individual defendants must be dismissed.[FN12]

> **FN12.** In plaintiff's 36th–42nd "Claims for Relief," plaintiff includes claims that he entitles "Excessive Force, Failure to Intercede, and Abuse of Authority." (Compl.¶ 102). It is completely unclear how any of those claims are relevant to the facts stated in plaintiff's complaint.

### V. *"Monell"* Claims

Plaintiff asks for *"Monell* damages." (Compl.¶ 74). A municipality such as the City of New York may be held liable as a "person" within the meaning of section 1983 . *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . However, in order for the municipality to be found liable, the civil rights violation in question must have been caused by the municipality's policy or custom. *Id.* at 694. The policy must be the "moving force" behind the constitutional violation. *Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal quotations omitted). Plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a causal connection between the municipal action and the deprivation of federal rights. *Id.*

The court, once again, is left to speculate regarding plaintiff's request for relief and must only assume that plaintiff is referring to New York City. Plaintiff's attempt to raise *Monell* claims must be dismissed. He does not name New York City as a defendant, and therefore, *Monell* is not a proper basis for relief against the existing

New York State defendants. There is also no claim that any of the conduct in question was committed by employees of a municipality, a further reason to dismiss any claims under *Monell,* regardless of the defendants that he has named in the caption of the complaint.

### VI. Titles VI and VII

**\*8** Congress has abrogated the State's sovereign immunity by enacting the 1972 amendments to Title VII, pursuant to the authority of section 5 of the 14th Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Thus, a *properly* stated claim for employment discrimination may be brought against the State, its departments or agencies, even though similar claims under constitutional provisions or other statutes might be barred by the Eleventh Amendment. *Feingold v. New York,* 366 F.3d 138, 149, 150, 157 (2d Cir.2004). Title VI involves the same prohibitions for employers that receive federal funds. 42 U.S.C. § 2000d Thus, if plaintiff in this case has stated a plausible claim under either Title VII or Title VI, the case could proceed against the State of New York.[FN13]

> **FN13.** Plaintiff has obtained a "Right–to–Sue Letter" from the EEOC, a prerequisite to filing a civil action in Federal Court. (Compl. Ex. A at pp. 2–5). *See McPherson v. New York City Dep't of Educ.,* 457 F.3d 211, 214 (2d Cir.2006). The court notes that there are cases in which plaintiffs have challenged civil services examinations. *See, e.g. Ricci v. DeStephano,* 557 U.S. 557, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (challenging the failure to certify the results of a promotional examination); *Bushey v. N.Y. State Civil Svce. Comm.,* 733 F.2d 220 (2d Cir.1984) (challenging affirmative action regarding civil service examinations), *cert. denied,* 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985); *Association Against Discrimination in Employment,* 647 F.2d 256 (2d Cir.1981) (case challenging civil service examination for fire department); *United States v. City of New York,* No. 07–CV–2067, 2012 WL 314353 (E.D.N.Y. Feb. 1, 2012) (case challenging civil service examination procedures). However, the cited cases involve challenges to the tests themselves, rather than the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

refusal to allow a candidate to take the tests.

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of the individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a)(1). In order to state a claim under Title VII, plaintiff must show that he was a member of a protected class, he was qualified for the position, he suffered an adverse employment action, and the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Roge v. NYP Holdings, Inc.* 257 F.3d 164, 168 (2d Cir.2001). A plaintiff relying on disparate treatment must show that he was similarly situated in all material respects to the individuals with whom he seeks to compare himself. *Mandell v. County of Suffolk,* 316 F.3d 368, 379 (2d Cir.2003).

In this case, although plaintiff states that after September 11, 2001, he suffered unlawful discrimination and retaliation when he was "denied jobs systematically and unlawfully by the N.Y.S. State and its entities" because he was Pakistani. He also states that he was employed as a "Legal Coordinator for the New York City, Department of Correction for over fourteen (14) years." (Compl.¶ 8). He complains about being refused the opportunity to take civil service tests for a variety of positions, but never states that other similarly situated individuals were allowed to take the exams.

Plaintiff equates a refusal to allow him to take the test with a "discriminatory job denial"; however, plaintiff's ability to get the job would also have depended on his score on the tests. Plaintiff also states in a general fashion that he was "treated differently than other similarly situated potential employees," and that "[s]uch selective treatment was based on impermissible considerations *including but not limited to his age, color, gender, religion, national origin, ethnicity, creed and sexual orientation."* (Compl.¶ 22) (emphasis added). Plaintiff appears to be simply listing all the available bases for discrimination without really explaining how or why he was allegedly denied the opportunity to take these examinations.

**\*9** Plaintiff also apparently believes that because he has a law degree and an LL. M.[FN14], he is more qualified for the jobs that he lists than other individuals. (Compl.¶¶ 31, 46). Plaintiff states that "[u]pon information and belief, Christian, white, Black, female and under 40 years of age employees are hired systematically by the State of New York even though they do not meet the hiring criteria and for the same reasons jobs were granted in the case at hand." (Compl.¶ 20). Once again, plaintiff lists a variety of individuals who he "believes" have been hired by the State of New York even though they were not qualified for the jobs for which they were hired. Although plaintiff attempts to fashion this statement into a claim of discrimination against him, there is absolutely no support for this statement.

> FN14. An LL.M. refers to the title: "Master of Laws" and is an advanced law degree.

In order to state a claim for failure to hire under Title VII, plaintiff must allege that the position for which he was applying was eventually filled by someone who was not in the protected class. *See The Homeless Patrol v. Joseph Volpe Family,* No. 09 Civ. 3628, 2010 WL 2899099, at \*22 (S.D.N.Y. June 29, 2010) (citing *Farias v. Instructional Systems, Inc.,* 259 F.3d 91, 98 (2d Cir.2001)). Plaintiff's claim in this case is that he was not allowed to take the civil service examination for these jobs, but he never specifically alleges that people who are not in the protected class were hired for the specific jobs.[FN15] In fact, when plaintiff mentions other people who he believes were hired for jobs in general, he mentions at least two categories (Black and female) that are also protected classes. Thus, plaintiff does not state a claim under Title VII, and any such claims may be dismissed.

> FN15. Plaintiff never mentions who was hired for the specific jobs. In *The Homeless Patrol,* the plaintiff claimed that he was not hired by the Metropolitan Transit Authority (MTA) because of his German surname, *after* he had passed the tests for a "Conductor" and "Structure Maintainer." 2010 WL 2899099 at \*22. Although the court dismissed the claim primarily because plaintiff failed to exhaust his administrative remedies, the court also stated that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

"[h]e also does not allege any facts sufficient to create an inference of discrimination, such as whether these positions remained open or eventually were filled by someone whose ancestry was not German." *Id.* (citing *Farias, supra* ).

Plaintiff also uses the word "retaliation," however; there is no statement of facts that would support a claim that defendants retaliated against plaintiff for challenging a discriminatory practice under Title VII. Plaintiff alleges only that he was not allowed to take certain civil service examinations and never states how or why anyone retaliated against plaintiff for his "complaints." (Compl.¶¶ 35, 51). He states that after he "opposed" the retaliatory and discriminatory practices, he was "threatened" by the individual state defendants, although plaintiff never states the fact surrounding these alleged "threats."

To establish retaliation under Title VII, the plaintiff must show that (1) he was engaged in protected activity by opposing a practice that is made unlawful by Title VII; (2) the employer was aware of the protected activity; (3) he was subjected to adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Galdieri–Ambrosini,* 136 F.3d at 292 (citing *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir.1996)). In addition to the failure to explain how plaintiff alleges that he opposed the defendants' alleged discrimination, plaintiff states only that he was "threatened" because he complained. Plaintiff does not state that he suffered any adverse "employment" action as a result of the alleged retaliation and would therefore, be unable to state a viable claim for retaliation under Title VII. Thus, any claims for retaliation may be dismissed.

**\*10** As stated above, Title VI prohibits discrimination in programs and activities receiving federal assistance. 42 U.S.C. § 2000d. In plaintiff's complaint, he never mentions federal funding, and does not state a claim under Title VI. This is another instance in which plaintiff is merely listing possible bases for a federal complaint without any substance to the claim. Therefore, any claim that plaintiff purports to bring under Title VI may be dismissed.

## VIII. *Federal "Criminal" Penalties*

Without citing any relevant statutory basis, plaintiff seems to request that the defendants be found guilty of criminal offenses. In his section requesting relief, he asks that the court "[e]nter a judgment for infliction of punishment and *criminal penalties* on the active tortfeasors/defendants for engaging in criminal enterprise, conspiracies and for the intentional and willful violations of the plaintiff's Civil Rights ...." (Compl. at p. 31).

The law is quite clear that in the federal system, crimes are always prosecuted by the Federal Government, not by private complaints. *Hill v. DiDio,* 191 F. App'x 13, 14–15 (2d Cir.2006) (citing *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86–87 (2d Cir.1972)). For the court to conclude otherwise, the plaintiff must show that Congress specifically intended to create a private right of action pursuant to the statutes that plaintiff seeks to enforce. *Id. See also Storm–Eggink v. Gottfried,* 409 F. App'x 426, 427 (2d Cir.2011) (same). Plaintiff in this case cites no plausible basis upon which this court could assess federal criminal penalties against the defendants pursuant to plaintiff's civil employment discrimination complaint. Thus, to the extent that plaintiff requests federal criminal penalties, the complaint may be dismissed with prejudice.

## IX. *New York State Statutes and Common Law Claims*

First, the court notes that, without a federal basis for plaintiff's claims, the court may decline to exercise supplemental jurisdiction over any of plaintiff's state law claims under 28 U.S.C. § 1367(c). State law claims, standing alone, are more appropriately determined in a state forum in the interests of comity and efficiency. *Carnegie–Melon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). If the federal claims are dismissed before trial, then there is no basis for federal court jurisdiction, and any state law claims should generally be dismissed. *Cave v. E. Meadow Uniton Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir.2008). All plaintiff's state law claims could thus be dismissed without prejudice to him bringing his claims in state court, if appropriate or as supplemental to any properly amended federal complaint under Title VII.[FN16]

FN16. The court also notes that, to the extent that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

plaintiff asserts any claims based on the New York State Constitution, he has no private right of action where plaintiff would have an alternative remedy under section 1983. *See Flores v. City of Mt. Vernon,* 41 F.Supp.2d 439, 447 (S.D.N.Y.1999). Although plaintiff states no constitutional claim for relief sufficient to assert claims under section 1983 because he cites no personal involvement of the named individual defendants, section 1983 would be available in the appropriate circumstances, thus, no cause of action under the New York State Constitution exists here. The only possibility for supplemental state claims in this case would be under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* and the New York City Administrative Code §§ 8–107 *et seq.* if plaintiff is able to state a proper Title VII claim in his amended complaint. The New York State Human Rights Law and the cited sections of the New York City Administrative Code provide similar protection to Title VII. This citation of the New York City Code would require that plaintiff was denied entry to examinations that were held in New York City. Because the court is recommending dismissal of all plaintiff's federal claims at this time, the court need not determine the propriety of the supplemental claims, but will recommend dismissing them without prejudice.

However, the court also notes that some of plaintiff's state law claims fail to state proper causes of action in any event. Plaintiff cites section 19.01 of the New York Mental Hygiene Law in one of his "Claims for Relief." (*See* Compl. at p. 29). Section 19.01 of the Mental Hygiene Law is the New York Legislature's "Declaration of Policy" underlying the Alcoholism and Substance Abuse Act. *Johnson v. White,* No. 06 Civ. 2540, 2010 WL 3958842, at *7 (S.D.N.Y. Sept.9, 2010) (citing N.Y. Mental Hyg. Law, § 19.01). Regardless of what plaintiff's claim may be, the court in *Johnson* found that section 19.01 does not provide a private right of action. Without a private right of action, plaintiff may not rely upon this statute, and any claim purporting to be based on this section may be dismissed.[FN17] *Id.*

FN17. The court suspects that plaintiff may be citing this section because in paragraph 40 of his complaint, he alleges that the individually named defendants are "chronic alcohol abusers," and that the New York State government "failed to detect and prevent alcohol abuse problems and treat individually named defendants because they had [alcohol abuse problems] and their conduct injured the plaintiff." (Compl.¶ 40). Plaintiff has read section 19.01, stating New York's policy declaring that State and local governments have a responsibility to detect and prevent alcohol abuse problems and treat the individuals who have them, as the basis for a private right of action against the state, and against those that he charges with alcohol abuse. Because there is no private right of action, plaintiff cannot state a claim regardless of the claim that he might be trying to make.

**\*11** Plaintiff also states that the defendants have committed crimes under the New York Penal Law, "including but not limited to aggravated harassment, hate law crimes, verbal assaults, falsifying business records and fraud." (Compl.¶ 62). As with federal crimes, plaintiff has no private right of action to enforce state criminal statutes and lacks the authority to institute a criminal investigation. *See Madden v. Abate,* 800 F.Supp.2d 604, 606–607 (D.Vt.2011) (existence of a criminal statute prohibiting certain conduct does not in and of itself create a civil cause of action that may be brought by the victim of that conduct); *Heicklen v. U.S. Dep't of Homeland Sec.,* No. 10 Civ. 2239, 2011 WL 3841543, at *15 (S.D.N.Y. Aug. 30, 2011) (Report–Recommendation) (citations omitted), *adopted by* 2011 WL 4442669 (S.D.N.Y. Sept.23, 2011). Thus, even if the court were exercising supplemental jurisdiction, plaintiff would state no claim under New York State Penal Laws against any of the named defendants. *See also Senese v. Hindle,* No. 11–CV–72, 2011 WL 4536955, at *11–12 (E.D.N.Y. Sept. 9, 2011) (Report–Recommendation) (citing *inter alia Watson v. City of New York,* 92 F.3d 31, 36 (2d Cir.1996) (absent guidance from state courts, federal courts are hesitant to imply private rights of action from state criminal statutes), *adopted by* 2011 WL 4529359 (E.D.N.Y. Sept.28, 2011).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

## X. *Conclusion*

Plaintiff's complaint is a confused recitation that begins with a claim that he was not allowed to take certain civil service examinations because of the "aftermath" of 9/11 and because he was Pakistani or appeared Muslim. Essentially, plaintiff alleged discrimination based upon national origin. However, as the court read further into the complaint it degenerated into baseless rambling, raising every possible basis for employment discrimination, including "sexual orientation" and disability, without stating his sexual orientation or his disability, or, how the defendants discriminated on those bases.[FN18] Plaintiff cites every possible basis for discrimination, but also cites statutes that in no way apply to him or to the situation, without some tortured interpretation. Plaintiff's claims are inconsistent because he states in one paragraph that minority applicants scored lower than whites, and that the test set minority candidates up to fail, while in another paragraph stating that "defendant parties manipulated a hiring system to benefit Christian, white, black, females and under 40 applicants." (*Compare* Compl. ¶ 41 *with* ¶ 61). However, black and female applicants belong to a protected class also. Plaintiff claims that the test questions were vague and hypothetical, but also claims that he never took the examinations. (Compl.¶ 42).

> FN18. Clearly, neither plaintiff's sexual orientation, nor his disability could be related to alleged discrimination as the result of the terrorist attack on September 11.

As stated above, complaints relying on civil rights statutes are insufficient unless they contain some specific allegations of fact, indicating a deprivation of rights instead of a complaint like this one, containing "a litany of general conclusions that shock but have no meaning." *Rudy v. Auburn Correctional Facility,* No.2011 WL 3957337, at *6 (N.Y.N.D. Aug. 9, 2011) (citing *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Hunt v. Budd,* 895 F.Supp. 35, 38 (N.D.N.Y.1995)). Because plaintiff's complaint contains no real basis for relief, the court will recommend dismissal.

**\*12** Ordinarily, the court "should not dismiss a pro se complaint without granting leave to amend at least once *if there is any indication that a valid claim might be stated.*"

*Branum v. Clark,* 927 F.2d 698, 704–705 (2d Cir.1991) (emphasis added). In this case, *two* of plaintiff's claims regarding the alleged denial of opportunity to take the civil service examination due to ethnicity and age could conceivably state a Title VII claim against the State of New York. Therefore, the court will recommend that only plaintiff's federal claims in that regard be dismissed without prejudice, and that plaintiff be given an opportunity to submit an amended complaint raising those claims under Title VII. The rest of plaintiff's federal claims are either completely frivolous or cite statutes that have no relationship to plaintiff's claims and should be dismissed with prejudice because no amendment would survive a dismissal.

The court will also recommend that supplemental jurisdiction be declined with respect to any of plaintiff's state law claims, many of which are also clearly frivolous, but that the dismissal of those claims be without prejudice to plaintiff bringing any appropriate state law claims in state court or as supplemental to any properly amended complaint under Title VII as discussed in footnote 16 above.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) be **GRANTED AT THIS TIME FOR PURPOSES OF FILING THIS ACTION ONLY,** and it is

**RECOMMENDED,** that the complaint be dismissed **WITH PREJUDICE** as frivolous or for failure to state a claim as to all plaintiff's federal claims **EXCEPT** plaintiff's claim against the State of New York under Title VII, alleging that he was denied the opportunity to take civil service examinations based upon age and ethnicity, and that this claim be **DISMISSED WITHOUT PREJUDICE,** and it is

**RECOMMENDED,** that if the court approves this recommendation, plaintiff be given **FORTY–FIVE (45) DAYS FROM THE DATE OF THE ORDER APPROVING THE RECOMMENDATION** within which to file the appropriate amended complaint only with respect to the two previously-identified Title VII claims,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 1288760 (N.D.N.Y.)

(Cite as: 2012 WL 1288760 (N.D.N.Y.))

which shall supercede the original complaint, and it is

**RECOMMENDED,** that supplemental jurisdiction of any of plaintiff's state law claims be denied at this time, and those claims be **DENIED WITHOUT PREJUDICE,** and it is

**RECOMMENDED,** that if the court approves this recommendation, and if plaintiff timely files an amended complaint, the District Court order the Clerk to return the complaint to me for further review.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2012.

Sulehria v. New York
Slip Copy, 2012 WL 1288760 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1995 WL 236245 (N.D.N.Y.)

(Cite as: 1995 WL 236245 (N.D.N.Y.))

c

Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,
v.
Heather WOLLOWITZ, Attorney, Defendant.
No. 95–CV–0272 (TJM) (RWS).

April 10, 1995.
James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.
*I. Background*
**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1995 WL 236245 (N.D.N.Y.)

(Cite as: 1995 WL 236245 (N.D.N.Y.))

under the color of state law. *See, e.g., Rounseville v. Zahl, 13 F.3rd 625, 628 (2d Cir.1994)* (noting state action requirement under § 1983); *Wise v. Battistoni, 92–Civ–4288, 1992 WL 380914, *1, 1992 U.S.Dist. LEXIS 18864, *2–3 (S.D.N.Y. Dec. 10, 1992)* (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise, 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; see also D'Ottavio v. Depetris, 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).*

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

N.D.N.Y.,1995.

Myers v. Wollowitz
Not Reported in F.Supp., 1995 WL 236245 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
David SPICKERMAN, 02-B-0980, on his own behalf
and on behalf of all other plaintiffs; Brittany S., by her
biological father, David Spickerman; Timothy B., by his
biological father, David Spickerman; and Dalyn B., by
his next of friend, David Spickerman, Plaintiffs,
v.
Ronald CARR, Caseworker for Wayne County,
Department of Social Services, Child Protective
Agency; Lisa Graf, Caseworker for Wayne County,
Department of Social Services, Child Protective
Agency; Shannon Brendlinger, Preventive Service
Caseworker for Wayne County, Department of Social
Service, Child Protect Agency; Peggy McGall,
Caseworker Supervisor for Wayne County, Department
of Social Services, Child Protective Agency; Joan Kane,
Caseworker Supervisor for Wayne County, Department
of Social Services, Child protective Agency; Richard
Leblanc, Caseworker Supervisor for Wayne County,
Department of Social Services, Child Protective
Agency; M. Josh McCrossen, Commissioner for Wayne
County, Department of Social Service, Child Protective
Agency; Linda Kurtz, Director of Rochester Regional
Office; George E. Pataki, Governor of the State of New
York; and Brian J. Wing, Acting Commissioner of the
Department of Social Services of the State of New
York, Defendants.
No. 04-CV-6226P.

July 7, 2004.
David Spickerman, Attica, NY, pro se.

MEMORANDUM and ORDER

ELFVIN, J.

INTRODUCTION

**\*1** Plaintiff David Spickerman ("Spickerman"), an
inmate of the Wyoming Correctional Facility, has filed

this *pro se* action seeking relief under 42 U.S.C. § 1983
(Docket No. 1) and has both requested permission to
proceed *in forma pauperis* and filed a signed
Authorization (Docket No. 2). Additionally, he has filed
this complaint on behalf of others. He intends to pursue
claims on behalf of the minor children named as plaintiffs.
Plaintiff claims that the defendants, state and county
officials related to the Department of Social Services,
violated the constitutional rights of each and all of the
plaintiffs by failing to afford them the procedural and
agency protections necessary to protect their liberty
interest in their familial relationships.

For the reasons discussed below, Spickerman's
request to proceed as a poor person is granted, the claims
raised on behalf of the additional plaintiffs are dismissed,
and service by the U.S. Marshals is ordered with respect
to the remaining claims.

DISCUSSION

A. Named Plaintiffs

Plaintiff David Spickerman is proceeding *pro se,* on
his own behalf. To the extent that he also has brought this
claim on behalf of the minor children, however, he may
not act as the children's representative in this action. He is
not an attorney admitted to practice before this Court and
therefore may not proceed on behalf of the minor children.
*See Wenger v. Canastota Central School District,* 146
F.3d 123, 124-125 (2d Cir.1998); *Cheung v. Youth
Orchestra Foundation of Buffalo,* 906 F.2d 59, 61 (2d
Cir.1990); Fed.R.Civ.P. 17(c). Moreover, Spickerman
may not proceed *pro se* on the minor's behalf. "It goes
without saying that it is not in the interests of minors or
incompetents that they be represented by non-attorneys.
Where they have claims that require adjudication, they are
entitled to trained legal assistance so their rights may be
fully protected." *Cheung,* 906 F.2d at 61. Finally, to the
extent that the infant plaintiffs Brittany S., Timothy B.,
and Dalyn B. can be viewed as attempting to raise claims
*pro se* on their own behalf, such claims are also dismissed.
A minor may not bring an action on his own behalf in
federal court. Fed.R.Civ.P. 17(c). Bringing the claims of
such minor children would require the representation of

Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

counsel.[FN1] Accordingly, the claims of, or on behalf of, Brittany S., Timothy B., and Dalyn B. are hereby dismissed.

> FN1. Spickerman has not made a formal application for appointment of counsel, nor indicated that counsel is not available to the children. Should any action be commenced with respect to the minor children, a determination of whether to appoint counsel must take several factors into account. In a *pro se* case brought by a party who is unable to represent himself because he is a minor or is otherwise incompetent, the court must consider whether, without appointment of counsel, the case will go forward at all. Such a party will have no means of asserting his rights other than through counsel. If the infant or incompetent party is unable to retain private counsel and is also eligible for poor person status, the court must determine whether appointment of counsel would be in order. Of course, this does not mean that appointment of counsel is automatic; appointment of appointment should only be made after an evaluation of the allegations and issues presented in the action. *See Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997); *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986); *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989).

B. Spickerman's Claims

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis.* Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

**\*2** Spickerman raises several allegations regarding the policies and procedures of the defendants as they impacted

his familial relations with his children and his family's well-being. It is well settled that parents have a protected liberty interest in the care and rearing of their children. *See, e.g., Tenenbaum v. Williams,* 193 F.3d 581 (2d. Cir.1999); citing *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir.1991); *van Emrik v. Chemung County Dep't of Soc. Servs.,* 911 F.2d 863, 867 (2d Cir.1990); *Stanley v. Illinois,* 405 U.S. 645, 649-52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (rights to conceive and raise one's children have been deemed "essential" and "basic civil rights of man"); *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (the custody, care and nurture of the child reside first with the parents); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (liberty guaranteed by the Fourteenth Amendment includes the right to establish a home and bring up children); *Duchesne v. Sugarman,* 566 F.2d 817, 825 (2d Cir.1977) (recognizing the right of the family "to remain together without the coercive interference of the awesome power of the state"). He implicates not only the individual actions of the case workers initially involved, but also the Wayne County Child Protective Agency policies.

It may be that Spickerman may fail to prove his claims, but the Court's uncertainty that a plaintiff will ultimately succeed on the merits is no justification for a dismissal at this stage of the case. *See Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *and see McEachin v. McGuinnis,* 357 F.3d 197 (2d Cir.2004). Since the Court cannot say at this stage that " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief,' " *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), Spickerman's claims on his own behalf may go forward as pleaded.

Nevertheless, "[t]o state a valid claim under 42 U.S.C. §§ 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color

Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v.. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). A prerequisite for liability under § 1983 is personal involvement by the defendants in the alleged constitutional deprivation. *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997); *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986); *and see Hayut v. State University of New York,* 352 F.3d 733 (2d. Cir.2003).

Such involvement on the part of a supervisory official may be shown in one of several ways:

**\*3** if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation.

*Sealey v. Giltner,* 116 F.3d at 51 (citing *Williams v. Smith,* 781 F.2d at 323-24). Spickerman has not established the personal involvement of defendants George E. Pataki, Linda Kurtz and Brian J. Wing in the complained-of events. He simply alleges that he wrote to them and cites to their supervisory role in the state hierarchy. He does not allege that these officials acknowledged the letters, responded, or took any other action. This is not sufficient to find personal involvement. *Davis v. City of New York,* 2000 WL 1877045, \*9 (S.D.N.Y.2000) (finding no personal involvement where supervisory official ignored letter of protest and had no other involvement in the alleged constitutional deprivation); *Richardson v. Coughlin,* 101 F.Supp.2d 127, 132-133 (W.D.N.Y.2000) (granting summary judgment to supervisory official on ground that no personal involvement in constitutional violation shown where defendant merely ignored prisoner's letter of complaint); *Pritchett v. Artuz,* 2000 WL 4157, at \*6 (S.D.N.Y.2000) (finding no personal involvement and thus no § 1983 liability where supervisory official ignored prisoner's letter of complaint); *Thomas v. Coombe,* 1998 WL 391143, at \*6 (S.D.N.Y.1998) ("the fact that an official ignored a

letter alleging unconstitutional conduct is not enough to establish personal involvement"). Accordingly, Spickerman's claims against George E. Pataki, Linda Kurtz and Brian J. Wing are dismissed with prejudice.

CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, the claims brought by and/or on behalf of Brittany S., Timothy B., and Dalyn B. are dismissed. Spickerman's claims against Pataki, Kurtz and Wing are dismissed for failure to state a claim. The U.S. Marshal is directed to serve the summons and complaint on the remaining defendants regarding Spickerman's claims.

ORDER

IT HEREBY IS ORDERED, that Spickerman's request to proceed *in forma pauperis* is granted;

FURTHER, that the claims brought by and/or on behalf of Brittany S., Timothy B., and Dalyn B. are dismissed;

FURTHER, that Spickerman's claims against George E. Pataki, Linda Kurtz and Brian J. Wing are dismissed with prejudice for failure to state a claim;

FURTHER, that the Clerk of the Court is directed to terminate plaintiffs Brittany S., Timothy B. and Dalyn B., and defendants George E. Pataki, Linda Kurtz and Brian J. Wing as parties to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon defendants without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

**\*4** FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the complaint.

SO ORDERED.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1529219 (W.D.N.Y.)

(Cite as: 2004 WL 1529219 (W.D.N.Y.))

W.D.N.Y.,2004.

Spickerman v. Carr
Not Reported in F.Supp.2d, 2004 WL 1529219
(W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

**c**

Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Fred BROWN, Plaintiff
v.
Andrew SENIUK, N.Y.P.D.; Mr. Clarke, Ms. Bernstein,
Ms. Katz, Assistant District Attorneys; Richard Brown,
District Attorney, Queens County, New York; and
Pagona, N.Y.P.D., Defendants.
No. 01 CV 1248 SJ.

March 25, 2002.
Fred Brown, a/k/a James Mallard, Mohawk Correctional
Facility, Rome, NY, Petitioner, pro se.

Michael D. Hess, New York City Law Department, New
York, NY, By: Eugene Bernard Sohn, for Respondents, of
counsel.

*MEMORANDUM & ORDER*

JOHNSON, J.

**\*1** Plaintiff Fred Brown, a/k/a James Mallard,
("Brown" or "Petitioner") brought the above-captioned
action against New York City Police Officers Andrew
Seniuk and "Pagona," Queens County District Attorney
Richard Brown, and Assistant District Attorneys "Clark,"
"Burnstein," and "Katz" (collectively, "Defendants"). His
action, initially entitled a "felony complaint," was
construed as a civil action under 42 U.S.C. § 1983.
Presently before the Court is Defendants' motion to
dismiss the complaint. For the following reasons,
Defendants' motion is granted in its entirety.

FACTUAL BACKGROUND

This civil action arises out of the State court criminal
conviction of Plaintiff Fred Brown for a number of theft
offenses. Plaintiff was arrested on June 11, 1996, charged
with Criminal Possession of Stolen Property, Grand
Larceny, Burglary, Possession of Burglar's Tools,

Resisting Arrest, and Illegal Possession of a Vehicle
Identification Number, and indicted by a Grand Jury on
charges of Criminal Possession of Stolen Property in the
Second, Fourth, and Fifth Degrees, Grand Larceny in the
Second and Fourth Degrees, Burglary in the Third Degree,
Criminal Mischief in the Third Degree, and Unauthorized
Use of Vehicle in the Third Degree. On January 23, 1998,
he was convicted by a jury in the New York Supreme
Court, Queens County, of Criminal Possession of Stolen
Property in the Second and Fourth Degrees, Grand
Larceny in the Second and Fourth Degrees, Burglary in
the Third Degree, and Unauthorized Use of a Vehicle in
the Third Degree. He was sentenced on February 25, 1998
to seven and one half to 15 years. (Certificate of
Disposition # 13837, Attached to Sohn Decl. as Ex. E.)
Petitioner appealed his conviction to the Appellate
Division, Second Department, which affirmed on May 30,
2000. State v. Brown, 709 N.Y.S.2d 413 (2000). The
Court of Appeals denied leave to appeal that decision on
August 28, 2000. State v. Brown, 715 N.Y.S.2d 218
(2000). Plaintiff filed the instant lawsuit on March 13,
2001, alleging a variety of criminal actions by Seniuk,
Clarke, Katz, and Bernstein. On June 20, 2001, or
thereabouts, Plaintiff submitted an amended complaint,
which was filed with the Court on July 2, 2001. The
amended complaint added District Attorney Richard
Brown and New York Police Officer Pagona as
Defendants.[FN1] Defendants filed this motion to dismiss on
June 12, 2001.

> FN1. Plaintiff's "Amended and Supplemental
> Pleading Pursuant to 15(a) RCP" was apparently
> filed after Defendants served their Motion to
> Dismiss on or about June 12, 2001. Rule 15(a)
> of the Federal Rules of Civil Procedure specifically
> states that "[a] party may amend the party's
> pleading once as a matter of course any time
> before a responsive pleading is served.... 
> Otherwise, a party may amend the party's
> pleading only be leave of court or by written
> consent of the adverse party." Plaintiff did not
> seek leave of the Court, nor did he request
> Defendants' consent to amend his complaint.
> Accordingly, Defendants urge the Court to reject

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

Plaintiff's amended complaint. However, the Court recognizes the difficulty of proceeding *pro se* and from within custody, considers that Plaintiff may not have received Defendants' Motion to Dismiss prior to filing his Amended Complaint, and construes his amended complaint as a request to amend his original pleading. Defense counsel was notified of the addition of two new individual defendants and the additional claims against them in time to address the amended complaint in the Reply brief. Thus, the Court will accept and consider Plaintiff's Amended Complaint.

DISCUSSION

Plaintiff initially styled his complaint a "Felony Complaint Pursuant to Rule 3, and 23." However, it is axiomatic that a private citizen cannot bring a criminal complaint. *See e.g. Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86–87 (2d Cir.1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not as has sometimes been done in Anglo–American jurisdictions by private complaints."). Plaintiff's complaint alleged a violation of his civil rights involving his conviction. Accordingly, the Court construes his complaint as a § 1983 civil action seeking relief from violations of his constitutional rights. Plaintiff's Claims Under Section 1983

**\*2** Plaintiff's remedies under § 1983 are limited. The Supreme Court held in *Preiser v. Rodriguez* that the exclusive remedy for a state prisoner challenging the fact or length of his confinement is through habeas corpus relief. 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983."). However, *Preiser* did not limit state prisoners' use of § 1983 in claims for damages. *Id.,* 411 U.S. at 494 ("If a state prisoner is seeking damages ... he is seeking

something other than immediate or more speedy release—the traditional purpose of habeas corpus. Accordingly, ... a damages action by a state prisoner could be brought under the Civil Rights Act in federal court."). Thus, this Court does have jurisdiction to hear § 1983 damages actions from state prisoners.

However, Plaintiff in this case does not make out a claim for relief under § 1983. In *Heck v. Humphrey,* the Supreme Court applied the standard used for civil actions for malicious prosecution to § 1983 damages actions, and required plaintiffs to show that the allegedly unconstitutional conviction had already been invalidated. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey,* 512 U.S. 477, 487 (1994).

Plaintiff here concedes that his conviction has not been overturned. Instead, he argues that it "is invalid as it was had in violation of Criminal Procedure Rules." (Pet.'s Reply Opp. Mot. Dismiss at 2.) His allegation is insufficient to meet the Supreme Court's requirement that plaintiffs "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. at 487. Plaintiff cannot show that his conviction was terminated in his favor by any of these means. Accordingly, his allegations must be dismissed as legally insufficient to state a claim against any of the Defendants under § 1983.

Plaintiff's Potential Claims for Malicious Prosecution and False Arrest

In their motion to dismiss, Defendants also responded to possible actions for false arrest and malicious prosecution. Neither of these actions are available to Plaintiff. First, a claim for false arrest would be time-barred. The statute of limitations for a constitutional claim for false arrest begins to run at the time of the arrest.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

*Bezerra v. County of Nassau,* 846 F.Supp. 214, 218–219 (E.D.N.Y.1994). Since Plaintiff was arrested on June 11, 1996, he would be required to have filed his complaint alleging false arrest by June 11, 1999. This action was not commenced until February 1, 2001. Accordingly, a claim for false arrest would be time-barred.

**\*3** Second, Plaintiff cannot make out a claim for malicious prosecution, because he fails to establish the elements necessary to sustain a claim. In order to succeed on a claim of malicious prosecution, whether brought under § 1983 or New York State law, Plaintiff must show that (1) the defendants commenced or continued a criminal proceeding against the plaintiff, (2) which ended in the plaintiff's favor, (3) that the defendants did not have probable cause for such a proceeding, and (4) that the defendants acted with actual malice. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Posr v. Court Officer Shield # 207,* 180 F.3d 409, 417 (2d Cir.1999). As discussed above, Plaintiff has not shown that the criminal proceedings against him have ended in his favor. Thus he cannot make out a claim for malicious prosecution regarding the charges on which he was convicted and which convictions still stand.

Plaintiff is also precluded from asserting a claim for malicious prosecution on the basis of the additional charges for which he was not convicted. The charges for Possession of Burglary Tools and Resisting Arrest, which were dropped prior to trial, are time-barred by the Statute of Limitations. The Statute of Limitations for actions for malicious prosecution is three years under 42 U.S.C. § 1983, and one year under New York state law. McKinney's CPLR § 215. Those additional charges were terminated, at the latest, on May 19, 1997. Plaintiff did not commence his suit until February 1, 2001.

Nor can he state a claim for malicious prosecution on the basis of the charges for Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree. Where, as here, the criminal prosecution has resulted in conviction on some charges, but not all charges, the Court must determine whether the charges are sufficiently distinct to allow a malicious prosecution claim to proceed on the charge or charges for which the individual was not convicted. *See Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989); *Picardo v. New York Police*

*Department, et al.,* 1998 WL 812049, at \*3 (S.D.N.Y.) Such analysis should consider whether the elements of each charge are similar or different and whether one charge is a lesser included offense of another. *Janetka,* 892 F.2d at 190. The Court should also consider whether the charges on which the individual was convicted were more or less serious than the charges which were dismissed or upon which the individual was acquitted. *See Pichardo,* 1998 WL 812049, at \*4.

Here, Plaintiff was indicted on several related charges stemming from a single event. He was convicted of most of these related charges, including Criminal Possession of Stolen Property in the Second and Fourth degrees. The charges upon which Plaintiff was not convicted, Criminal Possession of Stolen Property in the Fifth Degree and Criminal Mischief in the Third Degree, are no more serious than the charges for which Plaintiff was convicted. This Court finds that the charges are sufficiently related to the charges on which Plaintiff was convicted, and thus may not be the basis for a claim of malicious prosecution.

Plaintiff's Allegations of Conspiracy

**\*4** Plaintiff's initial complaint alleges acts of criminal conspiracy. However, Plaintiff does not assert sufficient allegations to make out a claim for conspiracy to violate his civil rights. In order to make out a claim of conspiracy to deprive constitutional rights under 42 U.S.C. § 1983, the plaintiff must show that there was: (1) an agreement among co-conspirators; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of the goal, thus causing damages. *Pangburn v. Culbertson,* 200 F .3d 65, 72 (2d Cir.1999). In addition to asserting these elements, the plaintiff must allege specific facts that show that the defendants shared a unity of purpose or a common design to injure the plaintiff, not mere conclusory allegations. *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 490 U.S. 386 (1991); *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993) ("Thus, complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."). In the instant case, Plaintiff alleges that ADA Clarke and Officer Seniuk conspired "to obtain an indictment at any cost,"

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)

(Cite as: 2002 WL 32096576 (E.D.N.Y.))

and that Seniuk and Bernstein conspired "to obtain a conviction at any cost." (Pl.'s Opp. Mot. Dismiss at 7.) He also recites the alleged acts of the Individual Defendants, including making false statements and falsifying reports, presenting false evidence, giving hearsay testimony (Compl. at 2–3), and failing "adequately to train and supervise assistant district attorney(s) Mr. Clarke, Ms. Katz and Ms. Burnstein to insure that they meet their constitutional obligation" (Amend. Compl. at 6). However, Plaintiff's argument is lacking specific facts that show an agreement among the alleged co-conspirators or that the Individual Defendants acted with a shared purpose or common objective. While New York law does allow the existence of civil conspiracies to be inferred from circumstantial evidence, "neither conjecture, surmise, nor suspicion can take the place of evidence." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.,* 90 F.Supp.2d 431 (S .D.N.Y.2000) (citing *Cooper v. Maurer,* 37 N.Y.S.2d 992, 996 (N.Y.Sup.Ct.1942)). Here, Plaintiff fails to present evidence, either circumstantial or direct, sufficient to infer the existence of a conspiracy.

As this Court finds that Plaintiff's complaint fails to state facts sufficient to maintain a § 1983 claim for damages, and finding no other claim for relief that may be granted, the Court need not consider Defendants' affirmative defenses of qualified immunity and prosecutorial immunity.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is hereby GRANTED in its entirety. The Clerk of the Court is directed to close this proceeding with prejudice.

SO ORDERED.

E.D.N.Y.,2002.

Brown v. Seniuk
Not Reported in F.Supp.2d, 2002 WL 32096576 (E.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

E.D. New York.
Anthony J. CEPARANO, Plaintiff,
v.
SUFFOLK COUNTY, County Executive Steve Levy, Suffolk County Police Department, Police Commissioner Richard Dormer, Former Police Commissioner (2003), Lt. Michael Fitzpatrick, Lt. James Maher, Lt. Paul Schrieber, Det. Anthony Leto, Det. Behrens, Det. Robert Suppa, Det. William Sheridan, P.O. Christopher Viar, P.O. Walter Hetzel, P.O. Kathleen Focas, P.O. Timothy Kelly, Sgt. Leonard, Sgt. William Wallace, P.O. Eric Guiterman, P.O. William Vasquez, P.O. James Behrens, P.O. Anthony Calato, P.O. Daniel Rella, P.O. Juan Valdez, Sgt. William Scaima, P.O. Anthony Wuria, P.O. Michael Pelcher, P.O. Ernie Ketcham, Sgt. Frank Giuliano, Lt. James Smith, Det. "James Smith's Partner", Sgt. Ken, P.O. (5TH Precinct), P.O. "John Doe's # 's 1–50", Lt. Stephen Hernandez, Lt. Daniel Meyer, Capt. John Hanley, Suffolk County Division of Medical Legal Investigations and Forensic Science, Chief of Toxicology Michael Lehrer, Asst. Chief of Toxicology Michael Katz, Toxicologist Lori Arendt, Reconstruction Analyst Robert Genma, Suffolk County District Attorney's Office, District Attorney Thomas J. Spota III, Chief Major Crime Bureau, A.D.A. Bradford S. Magill, A.D.A. Patricia Brosco, "Supervisor of Bradford S. Magill", "Supervisor of Patricia Brosco", Suffolk County Unified Courts System, Presiding Judge S.C. District Ct., Judge Gaetan B. Lozito, Presiding Judge Ralph T. Gazzilo, Presiding Judge C. Randall Hinrichs, Court Reporter Dennis P. Brennan, Court Reporter Susan T. Conners, Judge Martin Efman, Judge J.J. Jones, Suffolk County Legal Aid Society, Presiding Attorney Edward Vitale, Attorney Susan Ambro, 18–B Counsel Robert Macedonio, Suffolk County Sheriff's Department, Sheriff Vincent Demarco, Sheriff Alfred Etisch, Warden Ewald, Former Warden (2004–2006),

C.O. # 1158, C.O. # 1257, C.O. # 1251, C.O. # 1207, C.O. # 1259, C.O. # 1094, C.O. # 1139, C.O. # 1241, C.O. Violet, C.O. # 962, C.O. # 1131, C.O. "Tom Arnold", Lt. McClurkin, C.O. Galotti, Sgt. Fischer, C.O. Cathy Ryan (Peeping Pervert), C.O. Kenneth Lawler, C.O. # 668, Co. # 1274, C.O. William Zikis, C.O. # 1324, C.O. # 1275, C.O. Joseph Foti, C.O. # 1220, C.O. # 1276, C.O. Ezekiel, Dep "Brutalitywiolators" # 1–12, C.O. "John Civil Rights Violators" # 1–200, Nurse "Korea", Nurse Pat, Nurse Julie "Loud", Nurse "Male, Earring, Glasses", Nurse "Really Ugly Warts, Always Nasty & Rude", Suffolk County Probation Department, Senior Supervisor, Senior P.O. Bennedetto, Probation Officer Curtis, Probation Officer "Herman Muenster" (P.O. Curtis' Partner), Probation Officer Soltan, Probation Officer "P.O. Soltan Partner", Front Desk Clerk, Andrew O'flaherty, West Babylon Fire Department, Supervisor Mina, Emt McClean, Good Samaritan Hospital, Dr. Jeffrey Margulies, Dr. "I.C.U.", Nurse "Do You Want His Clothes", Nurse "Interogate [Sic] Him Before He's Sedated", Donna Venturini, Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Dr. "Julie Crist's E.R. Doctor", Dr. "Chief [of] Psychiatry", Newsday, Editor John Mancini, Managing Editor Deborah Henley, Managing Editor Debby Krenek, Reporter Bill Mason, 1010 Wins Radio, 1010 wins.com, Programming Director, Reporter, Cablevision, News 12 Long Island, Programming Director, Reporter, Southern Meadows Apartments, Property Manager Debra Cody, Property Manager, Maintenance [Sic] Supervisor William Florio, Suffolk County Intensive Case Management, Director Douglas Shelters, Case Manager Dana Romano, Bellport Outreach, Director, Supervisor of Julie Crist's Case Mgr Jenny, Julie Crist's Case Mgr Jenny, Global Tel–Link, Ceo, Board of Directors, Executive V.P. Billing and Marketing Margaret Phillips, Julie Dougherty A.K.A. Julie Crist, myspace.com, Mother's Against Drunk Driving (Madd), and Madd President 2007–2009, Defendants.

No. 10–CV–2030 (SJF)(ATK).

Dec. 15, 2010.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

Anthony J. Ceparano, Gowanda, NY, pro se.

### ORDER

FEUERSTEIN, District Judge.

I. Introduction

**\*1** On May 4, 2010, incarcerated *pro se* plaintiff Anthony J. Ceparano ("plaintiff") commenced this purported civil rights action pursuant to 28 U.S.C. § 1983 against approximately four hundred and fifteen (415) defendants, one hundred and fifty-three (153) of whom are named: FN1 Suffolk County, County Executive Steve Levy, Suffolk County Unified Courts System, Suffolk County District Attorney's Office, Suffolk County Legal Aid Society, Suffolk County Police Department, Suffolk County Sheriff's Department, Suffolk County Division of Medical Legal Investigations and Forensic Science, Suffolk County Probation Department, Suffolk County Police Commissioner Richard Dormer, Former Police Commissioner (2003), Captain John Hanley, Lieutenants Michael Fitzpatrick, James Maher, Paul Schrieber, James Smith, Stephen Hernandez, Daniel Meyer, Sergeants William Wallace, William Scaima, Frank Giuliano, Leonard, Ken Detectives Anthony Leto, Behrens, Robert Suppa, William Sheridan, "James Smith's Partner", Police Officers Christopher Viar, Walter Hetzel, Kathleen Focas, Timothy Kelly, Eric Guiterman, William Vasquez, James Behrens, Anthony Calato, Daniel Rella, Juan Valdez, Anthony Wuria, Michael Pelcher, Ernie Ketcham, "(5th Precinct)", Police Officers "John Doe's # 's 1–50", Chief of Toxicology Michael Lehrer, Assistant Chief of Toxicology Michael Katz, Toxicologist Lori Arendt, Reconstruction Analyst Robert Genma, Suffolk County District Attorney Thomas J. Spota III, Chief Major Crime Bureau, Assistant District Attorney Bradford S. Magill, Assistant District Attorneys Patricia Brosco, "Supervisor of Bradford S. Magill", "Supervisor of Patricia Brosco", Suffolk County presiding Judges Gaetan B. Lozito, Ralph T. Gazzilo, C. Randall Hinrichs, Martin Efman, J.J. Jones, Court Reporters Dennis P. Brennan, Susan T. Conners, Suffolk County presiding Legal Aid Attorneys Edward Vitale, Susan Ambro, 18–B Counsel Robert Macedonio, Suffolk County Sheriffs Vincent DeMarco, Alfred Etisch, Warden Ewald, Former Warden (2004–2006), Corrections Officers # 1158, # 1257, # 1251, # 1207, # 1259, # 1094, # 1139, # 1241,# 962, # 1131, # 668, # 1274, # 1324, # 1275, # 1220, # 1276, Violet, "Tom Arnold", Galotti, Ezekiel, "Cathy Ryan (Peeping Pervert)", William Zikis, Kenneth Lawler, Joseph Foti, Lieutenant McClurkin, Sergeant Fischer, "Dep BrutalityWiolators # 1–12", Corrections Officers "John Civil Rights Violators" # 1–200, Corrections Nurses "Korea", Pat, "Julie Loud", "Male, Earring, Glasses", "Really Ugly Warts, Always Nasty & Rude", Suffolk County Senior Probation Supervisor, Senior Probation Officer Bennedetto, Probation Officers Curtis, "Herman Muenster (P.O. Curtis' partner)", Soltan, "P.O. Soltan Partner", Front Desk Clerk, Andrew O'Flaherty, West Babylon Fire Department, Supervisor Mina, Emergency Medical Technician McClean, Good Samaritan Hospital, Doctors. Jeffrey Margulies, "I.C.U.", Nurses "Do you want his clothes", "Interogate [sic] him before he's sedated", Donna Venturini, Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Drs. "Julie Crist's E.R. Doctor", "Chief [of] Psychiatry", Newsday, Editor John Mancini, Managing Editor Deborah Henley, Managing Editor Debby Krenek, Reporter Bill Mason, 1010 WINS Radio, 1010 WINS.com, Programming Director, Reporter, Cablevision, News 12 Long Island, Programming Director, Reporter, Southern Meadows Apartments, Property Manager Debra Cody, Property Manager, Maintenence [sic] Supervisor William Florio, Suffolk County Intensive Case Management, Director Douglas Shelters, Case Manager Dana Romano, Bellport Outreach, Director, Supervisor of Julie Crist's Case Manager Jenny, Julie Crist's Case Manager Jenny, Global Tel–Link, CEO, Board of Directors, Executive Vice President of Billing and Marketing, Margaret Phillips, Julie Dougherty A.K.A. Julie Crist, Myspace.com, Mother's Against Drunk Driving (MADD), and MADD President 2007–2009. Accompanying the complaint is an application to proceed *in forma pauperis.* Upon review of the declaration accompanying plaintiff's application, I find that plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Accordingly, plaintiff's application is granted. However, for the reasons set forth below, the complaint is sua sponte dismissed in part without prejudice and dismissed in part with prejudice.

> FN1. Plaintiff's "named" defendants include those he has nicknamed (i.e. "Herman Muenster") or otherwise described (i.e. "Nurse

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

really ugly warts, always nasty & rude") as opposed to those simply included as "John Doe."

## II. The Complaint

**\*2** Plaintiff's handwritten complaint exceeds two hundred and fifty pages and is comprised of over seven hundred numbered paragraphs purporting to allege a myriad of claims based upon conduct alleged to have occurred between 2003 and 2009. The complaint is largely a collection of diatribes, opinions, conclusions and speculation devoid of underlying facts. For example, the complaint begins:

I grew up believing in this Country, and the ideals I was taught in school: "All men are created equal. By the people, of the people, for the people. No person shall be deprived of life, liberty or property without due process of the law. The rights of the people to be secure in their persons, houses, and papers ..." Anyone who believes this has never lived in Suffolk County. It is all a lie! The people have no rights. Police, D.A.'s, local government agents, wield unchecked power and abuse whoever they want at will. No one is safe, and god forbid you've ever made a mistake, you are targeted forever ...

It took just *one year* of living in Suffolk County ... to destroy all my faith, and every illusion that I ever had about having civil rights. I thought these things only happened in urban ghettos or the backwoods of the deep south. Never could I have imagined this could ever happen here. It's a sick game. There is no justice ...

Compl. at ¶ IV (emphasis in original). The complaint continues:

Police brutality in Suffolk County is not the exception. It is the rule. It is page one, standard operating procedure. A badge in Suffolk County is a license to assault, and even kill, placing the holder above the law. I have been arrested seven times in Suffolk County, six of which I was taken into custody. Of the six, *five* (83%) involved police brutality and excessive force.

*Id.* at ¶¶ 8–9 (emphasis in original). Plaintiff then describes each of his arrests in Suffolk County, beginning with his November 8, 2003 arrest wherein Lieutenant James Smith is alleged to have "yanked the phone out of

my hand [and] smashed me over the head with it." *Id.* at ¶ 10. According to the complaint, "[i]n Suffolk County, law enforcement is a self-serving, self-sustaining aberation [sic] that exists not for the benefit of and protection of society as much as it does for the enrichment of those who hold badges and law licenses." *Id.* at ¶ 52. Plaintiff alleges:

law here [in Suffolk County] is about conviction rates, merit raises, and elections. The goals are promotions and raises, and personal advancement and enrichment. Above all, it is about the exercise and abuse of power, without regard to consequence, by those that are above the law. These demons destroy lives, regardless of the irrelevant concepts of truth and innocence, with no more thought than you give to stepping on a bug while walking. Not only do police and district attorneys continue arrests and prosecutions of those they suddenly realize are innocent, they also entrap people they know from the start are innocent. The attitude is "you've been arrested before so you'll do some more time. So what? What difference does a little thing like innocence make? I need an arrest

**\*3** Rule 8(a) (2) of the Federal Rules of Civil Procedure requires that pleadings present a "short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach averment of a pleading shall be simple, concise and direct." Fed.R.Civ.P. 8; *Swierkiewicz v. Sorema, NA.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Pleadings must give "fair notice of what the plaintiff's claim is and the grounds upon which it rests" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), overruled in part on other grounds by *Bell Atlantic Corporation v. Twombly,* 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A complaint should be short and clear because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1998); *see also Roberto's Fruit Market,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

*Inc. v. Schaffer,* 13 F.Supp.2d 390 (E.D.N.Y., 1998).; *The Homeless Patrol v. Joseph Volpe Family,* 09–CV–3628, 2010 WL 2899076, at *7 (S.D.N.Y. July 22, 2010) (dismissing *sua sponte* a one hundred and forty-eight (148) page *pro se* amended complaint for, *inter alia,* failure to satisfy Rule 8). "Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [Rule 8's] goals and this system; such complaints must be dismissed." *Infanti v. Scharpf,* 06 CV 6552, 2008 WL 2397607, at *1 (E.D.N.Y. June 10, 2008) (quoting *Prezzi v. Berzak,* 57 F.R.D. 149, 151, 16 Fed.R.Serv.2d 970 (S.D.N.Y.1972)).

However, "[d]ismissal of a complaint in its entirety should be 'reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any is well disguised.' " *Infanti,* 2008 WL 2397607, at *2, (quoting *Salahuddin,* 861 F.Supp. at 42)). Accordingly, prolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit. *See, e.g., Jones v. Nat'l Communications and Surveillance Networks,* 266 F.App'x 31, 32 (2d Cir.2008) (affirming dismissal of fifty-eight (58) page, single-spaced *pro se* complaint with eighty-seven (87) additional pages of attachments, alleging over twenty (20) separate causes of action against more than forty (40) defendants for failure to meet the "short and plain statement" requirement of Rule 8); *Bell v. Lasaceli,* 08–CV–0278A, 2009 WL 1032857, at *2 (W.D.N.Y., Apr.15, 2009) (dismissing a two hundred (200) page *pro se* complaint naming forty-two (42) defendants for noncompliance with Rule 8); *Infanti,* 2008 WL 2397607 (dismissing *sua sponte* a ninety (90) page complaint comprised of over five hundred (500) paragraphs for running a foul of Rule 8's requirements); *see also In re Merrill Lynch & Co., Inc.,* 218 F.R.D. 76, 77–78 (S.D.N.Y.2003) (dismissing ninety-eight (98) page complaint comprised of three hundred and sixty-seven (367) paragraphs and explaining that "[w]hen a complaint is not short and plain, or its averments are not concise and direct, 'the district court has the power, on motion or *sua sponte,* to dismiss the complaint ....' ") (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995)). However, given the preference that *pro se* cases be adjudicated on the

merits and not solely on the ground that the complaint does not constitute a short and plain statement of the facts, leave to amend the complaint should be given at least once. *Salahuddin,* 861 F.Supp. at 42.

3. Habeas Corpus

**\*4** Section 1983 provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983. To state a claim under Section 1983, a complaint must contain factual allegations plausibly suggesting: (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977 L.Ed.2d 130 (1999); *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005).

B. Application

The complaint in its present form does not fulfill Rule 8(a)(2)'s pleading requirements. The complaint is prolix, confused, ambiguous, speculative, repetitive, argumentative and unintelligible. Neither the defendants nor the court should be required to expend the time, effort and resources necessary to parse through plaintiff's pleading in order to determine what claims, if any, plaintiff has alleged. Given "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension," *Shomo v. State of New York,* 374 F.App'x. 180, 183 (2d Cir.2010) (quoting *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972)), the Court *sua sponte* dismisses the complaint for failure to satisfy Rule 8(a)(2). However, plaintiff is afforded an opportunity to file a "short and plain statement of [his] claim" in accordance with this order. Plaintiff is advised that, for the reasons that follow, many of the named defendants are either immune from suit or are outside the scope of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

Section 1983. Accordingly, plaintiff's Section 1983 claims against these defendants are not plausible and should be omitted from any amended complaint because such an amendment would be futile.

1. Immunity

a. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns ...." *State Employees Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (quoting *W. Mohegan Tribe & Nation v. Orange C'ty,* 395 F.3d 18, 20 (2d Cir.2004)) (alterations in original). Eleventh Amendment immunity also extends to suits for money damages against state officials in their official capacities. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself") (internal citation omitted); *McNamara v. Kaye,* No. 06–CV–5169, 2008 WL 3836024, at *8 (E.D.N.Y. Aug.13, 2008) ("[L]awsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the State.").[FN2]

FN2. A narrow exception to this rule exists for suits injunctive relief against state officers in their official capacity. *See Will,* 491 U.S. at 71, n. 10. To the extent plaintiff seeks prospective injunctive relief against any state defendant in his or her official capacity, plaintiff may include such claim in an amended complaint to be filed in accordance with this order.

*5 Here, plaintiff's Section 1983 claims for money damages against the state defendants in their official capacities are barred by the Eleventh Amendment and therefore are not plausible. Accordingly, such claims are dismissed with prejudice. In so far as the plaintiff names the New York Unified Court System as a defendant, it too is considered an arm of the state and is thus immune from suit by the Eleventh Amendment. *Gollomp v. Spitzer,* 568 F.3d 355, 368 (2d Cir.2009) ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."). Thus, plaintiff's claims against the New York State Unified Court System are not plausible and are dismissed with prejudice.

b. Prosecutorial Immunity

Plaintiff also seeks to sue the prosecuting attorneys in the underlying criminal cases against him for civil rights violations pursuant to Section 1983. It is "well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983.' " *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir.2005) (internal quotations omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " *Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995) (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994)). In *Hill,* an Assistant District Attorney's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity as [being] part of his function as an advocate." *Id.* at 661.

Here, plaintiff alleges, *inter alia,* that Assistant District Attorneys Magill and Brosco withheld evidence from the grand jury and did not provide required disclosures until days before or the day of trial. These allegations fall within the scope of protection defined by the doctrine of prosecutorial immunity and plaintiff has failed to otherwise allege any conduct by these defendants that would fall outside the scope of prosecutorial immunity. Accordingly, plaintiff's claims against these

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

defendants are not plausible and are dismissed with prejudice.

c. Judicial Immunity

Plaintiff seeks to sue several state court judges of the Suffolk District Court, Suffolk County Court and New York State Supreme Court, Suffolk County, who were allegedly involved with his underlying criminal proceedings. Judges Lozito, Gazzilo [FN3], Hinrichs, Efman and Jones are entitled to absolute judicial immunity. It is well settled that judges are entitled to absolute immunity for damages arising out of judicial actions performed in their judicial capacity. *See Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990). Therefore, "if the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction." *Huminski v. Corsones,* 396 F.3d 53, 75 (2d Cir.2004).

> FN3. Plaintiff alternates the spelling of the defendant's name, spelling it "Gazzillo" and "Gazzilo."

*6 Even liberally construed, plaintiff alleges no acts performed by any of these defendants that fall outside the scope of absolute judicial immunity. To the extent plaintiff even describes the conduct of any of the judges, all acts described were performed in their official capacity as judges. Therefore, plaintiff's claims against these defendants are not plausible and are dismissed with prejudice.

d. Entities that are Immune from Suit

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002) (dismissing claim against Lynbrook Police Department); *see also Melendez v. Nassau County,* No. 10–CV–2516, 2010 WL 3748743, at *5 (E.D.N.Y. Sept.17, 2010) (dismissing claims against Nassau County Sheriff's Department); *Coleman v. City of New York,* No. 08–CV–5276, 2009 WL 909742, at *2 (E.D.N.Y. Apr. 1,

2009) (dismissing claims against New York City department of probation); *Conte v. County of Nassau,* No. 06–CV–4746, 2008 WL 905879, at *1 n. 2 (E.D.N.Y. Mar. 31, 2008) (dismissing § 1983 claims against Nassau County District Attorney's Office).

Insofar as plaintiff alleges claims against the Suffolk County Police Department, Suffolk County District Attorney's Office, Suffolk County Sheriff's Department and Suffolk County Probation Department, the Court finds these entities to be administrative arms of the municipality and therefore lack the capacity to be sued. The Court construes Suffolk County Division of Medical, Legal Investigations and Forensic Sciences to be an administrative arm of the municipality and thus lacks the capacity to be sued. *S ee Bennett v. County of Suffolk,* 30 F.Supp.2d 353 (E.D.N.Y.1998) (Suffolk County acted through its Department of Health Services). [FN4] Therefore, plaintiff's claims against the above named entities are dismissed with prejudice.

> FN4. The Court takes judicial notice that the Suffolk County Division of Medical Legal Investigations is a division of the Suffolk County Department of Health Services.

2. Private Defendants Not Amenable to Suit Under § 1983

a. Suffolk County Legal Aid Society, Edward Vitale and Susan Ambro

"[T]he Legal Aid Society ordinarily is not a state actor amenable to suit under § 1983." *Schnabel v. Abramson,* 232 F.3d 83, 86–87 (2d Cir.2000). Furthermore, Legal Aid attorneys are employees of "a private not for profit legal services corporation ... organized under the laws of New York [that] exists independent of any state or local regulatory authority." *Neustein v. Orbach,* 732 F.Supp. 333, 336 n. 3 (E.D.N.Y.1990). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs.,* 526 U.S. at 49 (internal quotations omitted). Given that the Suffolk County Legal Aid Society and its attorneys are not state actors, plaintiff's § 1983 claims against the Suffolk County Legal Aid Society and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

its attorneys, Edward Vitale and Susan Ambro, are not plausible and are thus dismissed with prejudice.

b. Other Private Defendants

**\*7** As stated above, a defendant must be acting under color of state law to be liable for a § 1983 claim. *Id.* Plaintiff's complaint largely describes alleged civil rights violations pursuant to Section 1983 against a myriad of private actors. Insofar as plaintiff purports to allege Section 1983 claims against private defendants for violations of his civil rights, such claims are not plausible and are dismissed with prejudice. Accordingly, the complaint is dismissed as against E.M.T. McClean, Good Samaritan Hospital, Dr. Jeffrey Margulies, Donna Venturini, Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Newsday, John Mancini, Deborah Henley, Debby Krenek, Bill Mason, 1010 WINS Radio, 1010 WINS.com, South Meadows Apartments, Debra Cody, William Florio, Bellport Outreach, Global Tel-Link, Margaret Phillips, Julie Dougherty A.K.A. Julie Crist, Myspace.com, and Mother's Against Drunk Driving (MADD).

3. Unnamed Correctional Officers

Although it is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit, in the case of *pro se* litigants this rule has been relaxed. *Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997).

Plaintiff purports to allege claims against various unnamed officers alleged to work at the Suffolk County Police Department's Fifth Precinct and the Suffolk County Sheriff's Department as well as other "John Doe" defendants, whose work places are not identified within the Complaint. The United States Marshal Service will not be able to serve the intended defendants without further information. Accordingly, the Court hereby directs plaintiff to ascertain the full names of the unidentified defendants whom plaintiff seeks to sue.

4. Claims Against State Actors in Their Individual Capacities

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). Whether or not there was "personal involvement is a question of fact." *Williams,* 781 F.2d at 323.

Upon review of the voluminous complaint, the Court finds that the following defendants, though named in the caption, appear nowhere in the body of the complaint: Suffolk County Executive Steve Levy, Police Commissioner Richard Dormer, Police Commissioner Former 2003, Det. Behrens, Det. William Sheridan, P.O. Timothy Kelly, Sgt. Leonard, Sgt. William Wallace, P.O. Eric Guiterman, P.O. James Behrens, P.O Anthony Calato, P.O. Daniel Rella, P.O. Juan Valdez, Sgt. William Scaima, P.O. Anthony Wuria, P.O. Michael Pelcher, P.O. Ernie Ketcham, Sgt. Frank Giuliano, Michael Lehrer, Thomas J. Spota, Supervisor of Bradford S. Magill, Supervisor of Patricia Brosco, Presiding Judge S.C. District Court 6/5/07, Edward Vitale, Sheriff Vincent DeMarco, Sheriff Alfred Etisch, Warden Ewald, Warden Former 8/04–5/06, C.O. # 1158, C.O. # 1257, C.O. # 1207, C.O. # 1259, C.O. # 1094, C.O. # 1139, CO. Violet, C.O. # 962, C.O. "Tom Arnold", C.O. Galotti, Sgt. Fischer, C.O. Cathy Ryan (Peeping Pervert), C.O. Kenneth Lawler, C.O. # 668, C.O. # 1274, CO. William Zikis, C.O. # 1324, CO. # 1275, C.O. Joseph Foti, C.O. Ezekiel, Dep "Brutality\*Violators" # 1–12, C.O. "John Civil Rights Violators" # 1–200, Suffolk County Probation Department, Senior Supervisor, Senior P.O. Bennedetto, Probation Officer Soltan, Probation Officer "P.O. Soltan Partner", Front Desk Clerk, West Babylon Fire Department, Supervisor Mina, EMT McClean, Dr. Jeffrey Margulies, Dr. "I.C.U.", Rob Gannon, Beth Feeney, Jeanne H. Morena, Southside Hospital, Dr. "Julie Crist's E.R. Doctor", Dr. "Chief [of] Psychiatry", Editor John Mancini, Managing Editor Deborah Henley, Managing Editor Debby Krenek, Reporter Bill Mason, Programming Director, Reporter, Programming Director, Reporter and Director Douglas Shelters.

**\*8** Plaintiff does not plead factual allegations such that these defendants would have notice of his claims and be able defend against them. Moreover, plaintiff does not allege that any of these defendants were personally involved in any of the alleged wrongdoing. Because personal involvement is a prerequisite to a damages award for an alleged constitutional violation, plaintiff's claims, as

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)

(Cite as: 2010 WL 5437212 (E.D.N.Y.))

plead, are not cognizable as against these defendants.

D. Leave to Amend

Rule 15(a) (2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir.2002) (citing *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' " *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.1998) (citing *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman,* 371 U .S. at 182. However, if amendment would be futile, *i.e.,* if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. *See Lucente v. International Business Machines Corp.,* 310 F.3d 243, 258 (2d Cir.2002).

Since plaintiff is proceeding *pro se,* he is granted leave to amend his complaint to replead his 1983 claims in accordance with this order. Plaintiff shall comply with Federal Rule of Civil Procedure 8 as set forth above at pages eight to ten (8–10) and file any amended complaint in accordance with this order **within thirty (30) days from the date this order is served with notice of entry upon him,** or plaintiff's complaint will be deemed dismissed with prejudice.

IV. Conclusion

For the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is granted and the complaint is *sua sponte* dismissed with leave to amend within thirty (30) days from the date this order is served with notice of entry upon plaintiff. The Superintendent of the facility in

which plaintiff is incarcerated must forward to the Clerk of the Court a certified copy of plaintiff's trust fund account for the six (6) months immediately preceding this order, in accordance with plaintiff's authorization in his *in forma pauperis* application. The agency holding plaintiff in custody must calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from his prison trust fund account, and disburse them to the Clerk of the United States District Court for the Eastern District of New York. The Warden or Superintendent shall not deduct more than twenty percent (20%) from plaintiff's trust fund account.

**\*9** The Clerk of the Court is directed to mail a copy of this order, together with plaintiff's authorization, to the Superintendent of the facility in which plaintiff is incarcerated and to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, *see* Fed.R.Civ.P. 5(b)(2)(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

E.D.N.Y.,2010.

Ceparano v. Suffolk County
Not Reported in F.Supp.2d, 2010 WL 5437212 (E.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2008 WL 4279494 (N.D.N.Y.)

(Cite as: 2008 WL 4279494 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Kenley POWELL, Plaintiff,
v.
Julia HARRIS, Defendant.
Civ. No. 1:08-CV-344 (TJM/RFT).

May. 14, 2008.
Kenley Powell, Newburgh, NY, pro se.

### REPORT-RECOMMENDATION and ORDER

RANDOLPH F. TREECE, United States Magistrate
Judge.

*1 The Clerk has sent to the Court a civil rights
Complaint, together with an Application to Proceed *In
Forma Pauperis* (IFP), and a Motion to Appoint Counsel,
filed by *pro se* Plaintiff Kenley Powell. Dkt. No. 1,
Compl; Dkt. No. 2, Mot. for IFP; Dkt. No. 3, Mot. to
Appt. Cnsl. Because the pleading filed by Powell fails to
satisfy the basic pleading requirements, as more fully
discussed below, this Court recommends an order be
issued directing Plaintiff to file an amended complaint
should he wish to avoid dismissal of this action.

### I. DISCUSSION

#### A. Rules Governing Pleading Requirements

Rule 8 of the Federal Rules of Civil Procedure
provides that a pleading which sets forth a clam for relief
shall contain, *inter alia,* "a short and plain statement of the
claim showing that the pleader is entitled to relief." *See*
FED.R.CIV.P. 8(a) (2). The purpose of this Rule "is to
give fair notice of the claim being asserted so as to permit
the adverse party the opportunity to file a responsive
answer [and] prepare an adequate defense." *Hudson v.
Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998)
(quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15,
16 (N.D.N .Y.1995) (McAvoy) (other citations omitted)).
Moreover, Rule 10 of the Federal Rules of Civil

Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must
state its claims or defenses in numbered paragraphs,
each limited as far as practicable to a single set of
circumstances. A later pleading may refer by number to
a paragraph in an earlier pleading. If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence-and each defense other than a
denial-must be stated in a separate count or defense.

FED.R.CIV.P. 10(b).

The purpose of Rule 10 is to "provide an easy mode
of identification for referring to a particular paragraph in
a prior pleading[.]" *Sandler v. Capanna,* 1992 WL
392597, at *3 (E.D. Pa. Dec. 17, 1992 (citing 5 C. Wright
& A. Miller, *Federal Practice and Procedure,* § 1323 at
735 (1990)).

A complaint that fails to comply with these Rules
presents too heavy of a burden for the defendants in
shaping a comprehensive defense, provides no meaningful
basis for a court to assess the sufficiency of a plaintiff's
claims, and may properly be dismissed by the court.
*Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996)
(McAvoy). As the Second Circuit has stated, "[w]hen a
complaint does not comply with the requirement that it be
short and plain, the Court has the power, on its own
initiative, ... to dismiss the complaint." *Salhuddin v.
Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). "Dismissal,
however, is usually reserved for those cases in which the
complaint is so confused, ambiguous, vague, or otherwise
unintelligible that its true substance, if any, is well
disguised." *Hudson v. Artuz,* 1998 WL 832708, at *2
(internal quotation marks and citation omitted). In those
cases in which the court dismisses a *pro se* complaint for
failure to comply with these Rules, it should afford the
plaintiff leave to amend the complaint to state a claim that
is on its face nonfrivolous. *See Simmons v. Abruzzo,* 49
F.3d 83, 86-87 (2d Cir.1995).

#### B. Allegations Contained in the Complaint

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4279494 (N.D.N.Y.)

(Cite as: 2008 WL 4279494 (N.D.N.Y.))

**\*2** A review of the Complaint reveals that such pleading clearly fails to satisfy the requirements of the above-mentioned Federal Rules. The Complaint consists of one rambling paragraph that is incoherent and fails to implicate the named Defendant, Julia Harris, in any manner whatsoever.[FN1] In addition, the Complaint fails to identify the basis for this Court's subject matter jurisdiction. It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the want of its own jurisdiction. *City of Kenosha, Wisconsin v. Bruno,* 412 U.S. 507, 512 (1973). A challenge to subject matter jurisdiction cannot be waived and may be raised *sua sponte* by the court. *Alliance of Am. Ins. v. Cuomo,* 854 F.2d 591, 605 (2d Cir.1988); FED.R.CIV.P. 12(h)(3); *see also United States v. Griffin,* 303 U.S. 226, 229 (1938); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152 (1908). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin,* 303 U.S. at 229; FED.R.CIV.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

FN1. Plaintiff's Complaint states:

I would like for you to help me in this matter, I have spend [sic] all my saving[s] without any result[.] Here I send coppy [sic] with information [.] Let me [be] brief[.] I was sent copy of support from social service of Kingston N.Y.2001[.] I went and took blood test for paternity in 1990 and the case was dismiss[ed], in 1985 December. Blood test was taken. I have no knowledge of this test and prior June 2, 1986 was court trial court trial [sic] I have no knowledge of susch [sic] hearing, social services attorney admit that there was a fraud commit[ted] towards this case, this is the same attorney submit [sic] paper to the lower court towards this court and the same attorney who object [sic] my independent DNA and the same attorney, order jail term, I spent thirty days in jail and was refuse[d] a phone call to contact my family my taxi cab was leave [sic] in the street for thirty days. In this I am really bitter. But I leave this

matter in the hands of the court. Thank you.

Dkt. No. 1, Compl.

Finally, although the Complaint references an alleged fraud, the circumstances and perpetrators of that alleged fraud are not apparent, nor does Plaintiff identify or explain any injury he might have suffered. Based upon a review of the Exhibits attached to the Complaint, it appears that Plaintiff's claims stem from prior state filiation proceeding to which he was a party. However, the claims he raises by this Complaint are unintelligible and in no manner give fair notice to the Defendant as to the substance of the claims Plaintiff intends to assert. In sum, the Complaint is not presented in such a manner that would enable a potential defendant to adequately respond thereto.

Since Kenley's Complaint plainly does not comply with the requirements of the above-mentioned rules, we recommend the District Judge advise Plaintiff that unless he files an amended complaint his action will be dismissed.

Should Kenley be directed by the District Judge to file an amended complaint, we offer the following guidance. Any such amended complaint, *which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff,* must contain a caption that clearly identifies, by name, each individual that Kenley is suing in the present lawsuit and must bear the case number assigned to this action. The body of Plaintiff's amended complaint must contain *sequentially numbered paragraphs containing only one act of misconduct per paragraph.* Thus, if Kenley claims that his civil and/or constitutional rights were violated by more than one Defendant, or on more than one occasion, he shall include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4279494 (N.D.N.Y.)

(Cite as: 2008 WL 4279494 (N.D.N.Y.))

**\*3** Plaintiff's amended complaint shall also assert claims against each and every Defendant named in such complaint and state the basis for the subject matter jurisdiction of this Court; *any Defendants not named in such pleading shall not be Defendants in the instant action.* Plaintiff is further cautioned that no portion of any prior complaint shall be incorporated into his amended complaint by reference. *Plaintiff shall state in the single amended complaint all claims that he wishes this Court to consider as a basis for awarding Plaintiff relief herein; his failure to file such a pleading will result in dismissal of this action without further Order of the Court.*

### C. *In Forma Pauperis* Application

Accompanying Plaintiff's Complaint is a Motion for Leave to Proceed with this Action *In Forma Pauperis.* Dkt. No. 2. Although it appears Plaintiff has already paid the filing fee in full, obtaining IFP status would allow him to apply for certain benefits in the future such as service of process by the U.S. Marshal Service and appointment of counsel. Therefore, the IFP Application will be considered.

In his IFP Application, Plaintiff states that he is employed and earns $350 per week. In addition, Plaintiff indicates he has $1500 in a savings account, and that the average balance of said account during the six months preceding his IFP Application was $1000. Based upon this information, Plaintiff does not qualify for IFP status and the Application is **denied.**

### D. Motion for Appointment of Counsel

Lastly, we address Plaintiff's Motion for Appointment of Counsel. Dkt. No. 3. In *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335 (2d Cir.1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *Terminate Control Corp v. Horowitz.,* 28 F.3d at 1341 (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986)). Of these criteria, the most important

is the merits of the claims, *i.e.,* "whether the indigent's position was likely to be of substance." *McDowell v. State of N.Y.,* 1991 WL 177271, at \* 1 (S.D.N.Y. Sept. 3, 1991) (quoting *Cooper v. A. Sargenti & Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989)). Indigents do not have to demonstrate that they can win their cases without the aid of counsel; but, they do have to show likely merit. *Id.*

This action was only recently commenced. Given the above analysis, this Court cannot assess the merits of Plaintiff's allegations due to the insufficiency of his pleading. Where a Plaintiff provides mere allegations relating to his or her claims, as opposed to evidence, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of pro bono counsel. *See Harmon v. Runyon,* 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997). In light of the foregoing, the Court **denies** Plaintiff's Motion for Appointment of Counsel without prejudice.

**\*4 WHEREFORE,** it is hereby

**ORDERED,** that Plaintiff's Motion to Proceed with this Action *In Forma Pauperis,* (Dkt. No. 2) is denied; and it is further

**ORDERED,** that Plaintiff's Motion for Appointment of Counsel (Dkt. No. 3) is denied without prejudice; and it is further

**RECOMMENDED,** that this action be **dismissed** due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 8 and 10; and it is further

**RECOMMENDED,** that in light of Plaintiff's *pro se* status, prior to any dismissal, Plaintiff be afforded an opportunity to amend his Complaint consistent with the instructions above. In any amended complaint that Plaintiff files, he must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and any other terms the Court deems proper. Plaintiff must also allege claims of misconduct or wrongdoing against Defendants that he has a legal right to pursue and over which this Court has jurisdiction; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on Plaintiff by regular mail.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4279494 (N.D.N.Y.)

(Cite as: 2008 WL 4279494 (N.D.N.Y.))

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED.R.CIV.P. 72, 6(a), & 6(e).

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

In a Report-Recommendation and Order dated May 14, 2008, the Hon. Randolph F. Treece, United States Magistrate Judge, recommended that the action be dismissed due to Plaintiff's failure to comply with Federal Rules of Civil Procedure 8 and 10. Magistrate Judge Treece also recommended that

in light of Plaintiff's *pro se* status, prior to any dismissal, Plaintiff be afforded an opportunity to amend his Complaint consistent with the instructions [set forth in the Report-Recommendation and Order]. In any amended complaint that Plaintiff files, he must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and any other terms the Court deems proper. Plaintiff must also allege claims of misconduct or wrongdoing against Defendants that he has a legal right to pursue and over which this Court has jurisdiction.

Plaintiff has filed a proposed amended complaint that comports with Federal Rules of Civil Procedure 8 and 10, that asserts claims pursuant to 42 U.S.C. § 1983, and that complies with the instructions set forth in the Report-Recommendation and Order.

Therefore, the Court adopts Magistrate Judge's recommendation, and the proposed amended complaint shall be filled in the place of, and shall supersede, the original complaint.

**IT IS SO ORDERED**

N.D.N.Y.,2008.

Powell v. Harris

Not Reported in F.Supp.2d, 2008 WL 4279494 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2009 WL 1032857 (W.D.N.Y.)

(Cite as: 2009 WL 1032857 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Elijah BELL,
v.
LASACELI, et all, Defendants.
No. 08-CV-0278A.

April 15, 2009.
Elijah Bell, Napanoch, NY, pro se.

DECISION AND ORDER

DAVID G. LARIMERM, District Judge.

*INTRODUCTION*

**\*1** Plaintiff, Elijah Bell, currently an inmate at the Eastern Correctional Facility, who at the time of the events alleged in this action was an inmate at the Wende Correctional Facility, filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq* ., and was granted permission to proceed *in forma pauperis*. (Docket No.3).

Upon review of the original Complaint (Docket No. 1), pursuant to 28 U.S.C. § 1915e(2)(B) and 1915A, the Court found that, based on the manner in which the complaint was written, it was virtually impossible to read and understand and to determine whether the Plaintiff stated a claim upon which relief could be granted against any of the Defendants. The Court therefore directed Plaintiff to file an Amended Complaint that was legible and complied with Rules 8 and 10 of the Federal Rules of Civil Procedure, and logically and coherently set forth the factual bases of his claims. The Plaintiff was placed on notice that his failure to file an amended complaint as directed-*i.e.,* legibly and in compliance with Rules 8 and 10-, would result in the dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. (Docket No. 3, Order) (citing *Simmons v. Abruzzo,* 49 F.3d 83, 88 (2d Cir.1995); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d

Cir.1988)).

Plaintiff filed a First Amended Complaint (Docket No. 4), which "completely ignored in all respects the instructions and directions provided in the Court's initial Order (Docket No. 3) and was twice as lengthy (at least two to three inches thick and un-paginated) and, again, mostly illegible and indiscernible." (Docket No. 8, Order at 2). The Court, rather than dismissing the Amended Complaint, pursuant to 28 U.S.C. § 1915e(2)(B) and 1915A, for again failing to comply with Rule 8's "short and plain statement" rule, opted to provide the Plaintiff with an additional opportunity to amend his complaint to ameliorate its deficiencies and attempt to state a claim upon which relief could be granted. (Docket No. 8, Order at 3). See *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185 (2d Cir.2008) (stating that *pro se* litigants' complaints should be viewed liberally and that said litigants should be given the chance to amend their complaints as needed). The Court again directed that the Plaintiff's next (Second) Amended Complaint must comply with Rules 8 and 10 and set forth a short and plain statement of the claims against the Defendants. (Docket No. 8, Order).

*SECOND AMENDED COMPLAINT*

Plaintiff has now filed a Second Amended Complaint (Docket No. 9), which, among other deficiencies, is prolix and mostly unintelligible. It is over 200 pages-100 plus pages longer than the First Amended Complaint-and purports to allege, as best the Court can discern, that the Defendants-employees and officials of the New York State Department of Correctional Services ("DOCS")-violated his constitutional rights stemming from a whole host of complaints or grievances by way of "harassment, retaliations, discriminations, assaults...." The Second Amended Complaint names forty-two Defendants, and is an inordinately lengthy, impenetrable wall of convoluted dates and grievances. To the extent the Court can even read and understand it, the Second Amended Complaint seems to allege that Plaintiff's mail, grievances, and grievance appeals are stolen and thrown away once he places them in the proper mailbox in retaliation for his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1032857 (W.D.N.Y.)

(Cite as: 2009 WL 1032857 (W.D.N.Y.))

recurring grievances against the staff at Wende.

**\*2** Moreover, despite heeding the Court's directions to paginate the complaint, and include separate paragraphs and relevant dates, the sheer volume and lack of any logical or coherent organization of the Second Amended Complaint makes it, in the Court's opinion, simply impossible for either the Defendants or the Court to discern what the claims are. FN1 *See Salahuddin,* 861 F.2d at 42 (The purpose of Rule 8's "short and plain statement" rule is to provide defendant with fair notice of the claims against him and to enable him to answer the complaint and prepare for trial). A complaint fails to comply with Rule 8(a)(2) if it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42. The Second Amended Complaint (Docket No. 9) certainly fits this criteria, even more so than the first two complaints.

> **FN1.** For example, Plaintiff will often claim that his grievances concern the "same old discriminations and lies" made by Correctional Officers at the prison, yet, as far as the Court can determine, never signifies what the specific "lies" are.

While a court cannot dismiss a *pro se* complaint based solely on the plaintiff's failure to follow a court's specific instructions as to the complaint's "content and format," *Sealed Plaintiff,* 537 F.3d 185 at 191, it must be noted that the Second Amended Complaint (Docket No. 9), again, and emphatically fails to correct any of the fatal flaws of the original and First Amended Complaint. All it does is add page numbers and paragraphs, and provide a litany of dates for each of the over two hundred complaints and grievances made by Plaintiff against the staff at Wende. The Second Amended Complaint, after two earlier failed attempts, remains a continuous and unending stream of mostly illegible and unintelligible writing that the Court is simply unable to decipher or to make any real sense of.FN2

> **FN2.** As addressed below, Plaintiff is no stranger to the litigation process, and just recently in an action filed in the Northern District of New York Plaintiff was, like here, directed to file an amended complaint on the basis that the original

complaint was

> nearly illegible ... and [did] not set forth a short and plain statement of the relief of the facts ... but, rather, [was] a listing of more than thirty grievances [plaintiff] filed at Eastern Correctional Facility since his arrival there on July 15, 2008 ... Notwithstanding the Court's careful review of these pleadings, which are exceedingly difficult to read, it is impossible for the Court to determine if plaintiff can state a claim against each of the named defendants for the violation of his constitutional or statutory rights.

> *Bell v. Fischer, Commissioner, et al.,* 9:09-CV-0008 (LEK) (Docket No. 7, Order, at 4). The Court also notes in said Order that several of plaintiff's grievances relate to his "mail being picked up by staff "while light off." (*Id.* at 4, n. 2). Some of the grievances set forth in the instant matter relate to the staff taking Plaintiff's mail and the lights being turned off.

Because the Second Amended Complaint again, after two previous attempts, fails to even remotely comply with Rule 8's short and plain statement rule, his complaint must dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. *See Simmons,* 49 F.3d at 88; *Salahuddin,* 861 F.2d at 42.

It is well within a district court's discretion to deny leave to amend a prolix complaint if it is so voluminous and incomprehensible that no claims can be gleaned from it. *See Jones v. National Communications and Surveillance Networks,* No. 06-CV-1220, 266 Fed.Appx.31, 2008 WL 482599 (2d Cir.2008) (Summary Order) (stating that dismissing, pursuant to Rule 8, a plaintiff's 58 page, single-spaced complaint with 87 pages of attachments, alleging over twenty separate causes of action against more than 40 defendants was not an abuse of discretion). Plaintiff's Second Amended Complaint is similarly lengthy and rambling. *See also In re Merrill Lynch & Co., Inc.,* 218 F.R.D. 76, 77-78 (S.D.N.Y.2003) ("When a complaint is not short and plain, or its

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1032857 (W.D.N.Y.)

(Cite as: 2009 WL 1032857 (W.D.N.Y.))

averments are not concise and direct, 'the district court has the power, on motion or *sua sponte,* to dismiss the complaint or to strike such parts as are redundant or immaterial.' ") (quoting *Simmons,* 49 F.3d at 86).

**\*3** Again, while the Court is fully cognizant that "the dismissal of a *pro se* claim as insufficiently pled is appropriate only in the most unsustainable of cases[,]" *Boykin v. KeyCorp., 521 F.3d 202, 216 (2d Cir.2008),* Plaintiff has been afforded two opportunities to amend his complaint and his most recent effort falls even further short of meeting Rule 8's pleading requirements than his earlier ones. Accordingly, the Second Amended Complaint must be dismissed. *See Higgins v. Plumbers and Gas Fitters, Local Union No. 1,* 08-CV-2521 (RRM)(LB), 2008 U.S. Dist. LEXIS 76610, at \*3 (E.D.N.Y., Sept. 18, 2008).

## MATERIAL MISREPRESENTATIONS

In addition to the issues discussed above related to Plaintiff's repeated failures to present a coherent, logical and understandable pleading, Plaintiff made a fatal error in all three complaints, subjecting this action to dismissal pursuant to Fed.R.Civ.P. 11. All three complaints submitted by plaintiff (Docket Nos. 1, 4 and 9), make materially false representations regarding Plaintiff's litigation history. Section 4B of the form complaint Plaintiff had utilized for all three complaints in this action, asked Plaintiff: "Have you begun any other lawsuits in federal court which relate to your imprisonment?." Plaintiff answered "no" to this question each time. This answer is utterly and totally false.

While not mentioned by the Court in its first two Orders issued in this action, upon further review it has come to the Court's attention through its use of DOCS' Inmate Locator (http:// nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WIN Q130) and the PACER electronic database, U.S. Party/Case Index (https://pacer.uspi.uscourts.gov/cgi-bin/dquery.pl), that Plaintiff, Elijah Bell, has had three different DIN numbers (Department Identification Numbers) assigned to him during three different periods of incarceration and has filed *at least* eight other cases in the United States District Courts in New York from 1989 until the filing of this

action.FN3 It should also be noted also that two of these cases were dismissed pursuant to U.S.C. § 1915(d), the predecessor to 28 U.S.C. § 1915(e), for failure to state a claim, as well as two others for failure to prosecute under Fed.R.Civ.P. 41(b).

> FN3. The following cases were filed while plaintiffwas incarcerated by DOCS under DIN Number 94-A-5230: *Bell v. New York City Dept. of Corr.,* 94-CV-06562 (TPG); *Bell v. Officer, Female,* 94-CV-06478 (TPG); *Bell v. Rosario,* 94-CV-04593 (KMW)(NRB); *Bell v. New York City Dept. of Corr.,* 94-CV-05137 (RWS); *and Bell v. Warden, O.B.C.C. Corr. Fac.,* 94-CV-06125 (KMW). The following case was filed while plaintiffwas incarcerated by DOCS under DIN Number 05-A-1436: *Bell v. Coughlin,* 89-CV-01403 (RJA). The other two were filed presumably while Plaintiffwas detained in a Local Jail under identification number 4410101699: *Bell v. Captain William,* 01-CV-08712 (MBM); and *Bell v. Captain William,* 01-CV-06656 (JG) (LB).

> The Docket Sheets in each of these cases note the DIN number of the plaintiff and the DIN numbers match the DIN numbers assigned to Elijah Bell by DOCS as noted on the New York State Department of Correctional Services Website.

Generally, information about a *pro se* litigant's previous cases is material since it allows the Court to review any one the following issues: (1) if any of the issues in the current case had been previously litigated and decided, (2) if the plaintiff had, prior to being granted in forma pauperis status, garnered "three strikes" for purposes of 28 U.S.C. § 1915(g), (3) if piaintiffhas a record of frivolous litigation sufficient to warrant a "bar order" (an order preventing plaintiff from litigating further in that court without first meeting certain preconditions), and (4) if the plaintiff's litigation experience is so extraordinary that it dispenses of the need to afford him the full measure of special solicitude that is normally otherwise afforded to *pro se* litigants due to their inexperience in legal matters. *See Ifill v. Patterson, et al.,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1032857 (W.D.N.Y.)

(Cite as: 2009 WL 1032857 (W.D.N.Y.))

9:08-CV-1022 (GLS)(GHL) (Docket No. 4, Order and Report and Recommendation (N.D.N.Y., October 9, 2008).

**\*4** While answering question 4B on the Form Complaint is not necessary to state a claim, Plaintiff, on three separate occasions, answered the question falsely and "swore" to the answer's truthfulness in each complaint. *See* Fed.R.Civ.P. 11. Such a prevarication is an inexcusable misrepresentation to the Court and, in similar circumstances, other district courts have had no reservations about sanctioning *pro se* litigants for making such false statements.[FN4] Because Plaintiff has repeatedly misrepresented his litigation history to the Court-a significant one at that-, the Court finds that he has violated Fed.R.Civ.P. 11 and, therefore, this action will be dismissed, in the alternative, on that basis.

   FN4. *See, e.g., Crum v. Dodrill,* 06-CV-0586, 2008 WL 2357074, at \*10 (N.D.N.Y. June 4, 2008) (Hurd, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *McChud v. Tureglio,* 07-CV-0650, 2008 WL 1772305, at \*16 (N.D.N.Y. Apr.15, 2008) (Mordue, C.J., adopting, on plain-error review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Johnson v. Connolly,* 07-CV-0158, 2008 WL 724167, at \*12 (N.D.N.Y. March 17, 2008) (Kahn, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at \*13-14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at \*6, n. 32 (N.D.N.Y. July

11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) (collecting cases). *See also Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at \*1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith,* No. 05-13124, 181 Fed. Appx 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hood v. Tompkins,* No. 05-16358, 197 Fed. Appx 818, 819 (11th Cir. Aug.7, 2006) (affirming district court dismissal on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. Appx 855, 856-57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,* 99 F.3d 1145 (9th Cir.1996) (affirming district court th dismissal that was based on this ground); *accord, Dinkins v. Smalley,* 07-CV-0043, 2008 WL 160699, at \*3, n. 3 (S.D.Ga. Jan, 14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiffs complaint should be dismissed on this ground) (citing cases).

### CONCLUSION

   For the reasons set forth above, Plaintiff's Second Amended Complaint (Docket No. 9) is dismissed pursuant 28 U.S.C. § 1915(e) (2)(B) and 1915A. In the alternative, the Second Amended Complaint is dismissed on the basis that Plaintiff made repeated misrepresentations to the Court related to his prior litigation history.

   Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See* 28 U.S.C. § 1915(g).

   The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21(1962). Further requests to proceed on appeal as a poor person

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1032857 (W.D.N.Y.)

(Cite as: 2009 WL 1032857 (W.D.N.Y.))

should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### *ORDER*

IT HEREBY IS ORDERED that this action is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

IT IS SO ORDERED.

W.D.N.Y.,2009.

Bell v. Lasaceli
Slip Copy, 2009 WL 1032857 (W.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.



LEXSEE 1995 U.S.DIST. LEXIS 7136

**MINA POURZANDVAKIL, Plaintiff, -against- HUBERT HUMPHRY, JUDISICIAL SYSTEAM OF THE STATE OF MINNESOTA AND OLMESTED COUNTY COURT SYSTEAM, AND STATE OF MINNESOTA, SAINT PETER STATE HOSPITAL, DOCTOR GAMMEL STEPHELTON, ET EL ERICKSON, NORTH WEST BANK AND TRUST, OLMESTED COUNTY SOCIAL SERVICE, J.C. PENNY INSURNCE, METMORE FINICIAL, TRAVELER INSURNCE, COMECIAL UNION INSURNCE, HIRMAN INSURNCE, AMRICAN STATE INSURNCE, FARMERS INSURNCE, C. O BROWN INSURNCE, MSI INSURNCE, STEVEN YOUNGQUIST, KENT CHIRSTAIN, MICHEAL BENSON, UNITED AIRLINE, KOWATE AIRLINE, FORDMOTOR CRIDITE, FIRST BANK ROCHESTER, GEORGE RESTWICH, BRITISH AIRWAYS, WESTERN UNION, PRUDENIAL INSURNCE, T.C.F. BANK, JUDGE SANDY KIETH, JUDGE NIERGARI, OLMESTEAD COUNTY JUDGERING, JUDGE MORES, JUDGE JACOBSON, JUDGE CHALLIEN, JUDGE COLLIN, JUDGE THOMASE, JUDGE BUTTLER, JUDGE MORKE, JUDGE MOWEER, SERA CLAYTON, SUSAN MUDHAUL, RAY SCHMITE, Defendants.** [1]

1   Names in the caption are spelled to reflect plaintiffs complaint.

**Civil Action No. 94-CV-1594**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

*1995 U.S. Dist. LEXIS 7136*

**May 22, 1995, Decided
May 23, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint accusing defendants with kidnapping plaintiff and her daughter, torturing plaintiff in the Mayo Clinic, and causing plaintiff and her daughter to suffer physically, financially, and emotionally. Certain defendants sought vacation of the defaults entered against them without proper service, some sought dismissal of the complaint, and some sought both vacation of the defaults and dismissal.

**OVERVIEW:** Plaintiff served defendants by certified mail. The court determined that such service was not authorized under federal law or under either New York or Minnesota law. Additionally, plaintiff's extraterritorial service of process was not effective under *Fed. R. Civ. P.*

*4(k)*. Defendants were not subject to federal interpleader jurisdiction, and they were not joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19*. No federal long-arm statute was argued as a basis for jurisdiction, and the alleged harm did not stem from acts in New York for jurisdiction under *N.Y. C.P.L.R. § 302(a)*. The complaint showed no basis for subject matter jurisdiction against defendants that were insurance companies with no apparent relationship to claims of rape, torture, harassment, and kidnapping, and the court found that no basis for supplemental jurisdiction under *28 U.S.C.S. § 1367(a)* existed. Venue was clearly improper under *28 U.S.C.S. § 1391(b)* because no defendant resided in the district and none of the conduct complained of occurred there. Plaintiff's claims of civil rights violations were insufficient because her complaint was a litany of general conclusions, not specific allegations of fact.

**OUTCOME:** The court vacated all defaults. The court dismissed plaintiff's complaint against all moving and non-moving defendants. The dismissal of the complaint against certain defendants premised on the court's lack of power either over the person of the defendant or the subject matter of the controversy was without prejudice, but dismissals against the remaining defendants were with prejudice. Requests for sanctions and attorney's fees were denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Residential Service*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Agents*
*Governments > Federal Government > Employees & Officials*
[HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2)*. Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed. R. Civ. P. 4(e)(1)*.

*Business & Corporate Law > Agency Relationships > Agents Distinguished > General Overview*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Methods > Service Upon Corporations*
[HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1), 4(e)(1)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods > General Overview*
[HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *N.Y. C.P.L.R. §§ 308, 311* (Supp. 1995); *N.Y. Bus. Corp. Law § 306* (Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995).

*Civil Procedure > Pleading & Practice > Service of Process > Methods > Mail*
*Civil Procedure > Pleading & Practice > Service of Process > Time Limitations > General Overview*
*Governments > Local Governments > Claims By & Against*
[HN4] Service on states, municipal corporations, or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2)*. Minnesota law does not authorize service on a governmental entity by certified mail. Minn. R. 4.03(d), (e) (1995).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Parties > Interpleaders > General Overview*
[HN5] A plaintiff's extraterritorial service of process in New York can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York state; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Fed. R. Civ. P. 14* or *Fed. R. Civ. P. 19* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN6] *N.Y. C.P.L.R. § 302(a)* provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state such as transacting any business in the state and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General*

*Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy*
[HN7] *28 U.S.C.S. § 1367(a)* requires a relationship between the state and federal claims for pendent jurisdiction so that they form part of the same case or controversy.

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > Citizenship > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN8] See *28 U.S.C.S. § 1391(a).*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
*Civil Procedure > Venue > Multiparty Litigation*
[HN9] See *28 U.S.C.S. § 1391(1).*

*Civil Procedure > Venue > Federal Venue Transfers > Improper Venue Transfers*
*Civil Procedure > Venue > Individual Defendants*
*Civil Procedure > Venue > Multiparty Litigation*
[HN10] Where venue is laid in the wrong district, the court shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought. *28 U.S.C.S. § 1406(a).*

*Civil Procedure > Venue > Motions to Transfer > General Overview*
*Civil Procedure > Judicial Officers > Judges > Discretion*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is to eliminate impediments to the timely disposition of cases and controversies on their merits.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN12] Where a court has already dismissed against the moving parties on jurisdictional grounds, it has no power to address a *Fed. R. Civ. P. 12(b)(6)* issue.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*

*Civil Rights Law > General Overview*
[HN13] Complaints that rely on civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights instead of a litany of general conclusions that shock but have no meaning.

*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN14] A pro se plaintiff's complaint must be construed liberally and should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
*Civil Procedure > Parties > Self-Representation > Pleading Standards*
[HN15] Even pro se complaints must show some minimum level of factual support for their claims.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Counsel > Appointments*
*Civil Rights Law > Prisoner Rights > Prison Litigation Reform Act > Claim Dismissals*
[HN16] The United States Supreme Court explicitly has acknowledged a district court's power under *28 U.S.C.S. § 1915(d)* to dismiss as frivolous a complaint that lacks an arguable basis either in law or in fact. The Supreme Court has explicitly declined to rule, however, on whether a district court has the authority to dismiss sua sponte frivolous complaints filed by non-indigent plaintiffs. The law in the district of New York is that a district court may sua sponte dismiss a frivolous complaint even if the plaintiff has paid the filing fee.

COUNSEL: [*1]   HUBERT H. HUMPHREY, III, Attorney General of the State of Minnesota, Attorney for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins, St. Paul, MN, OF COUNSEL: JEROME L. GETZ, Assistant Attorney General.

CONDON & FORSYTH, P.C., Attorneys for British Airways, P.L.C. and Kuwait Airways Corp., New York, NY, OF COUNSEL: STEPHEN J. FEARON, ESQ., MICHAEL J. HOLLAND, ESQ.

DUNLAP & SEEGER, P.C., Attorneys for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc., Rochester, MN, OF COUNSEL: GREGORY J. GRIFFITHS, ESQ.

ARTHUR, CHAPMAN, McDONOUGH, KETTERING & SMETAK, P.A., Attorneys for J.C. Penney Insurance Co. and Metropolitan Insurance Co., Minneapolis, MN, OF COUNSEL: EUGENE C. SHERMOEN, JR., ESQ.

SHAPIRO & KREISMAN, Attorneys for Metmor Financial, Inc., Rochester, NY, OF COUNSEL: JOHN A. DiCARO, ESQ.

COSTELLO, COONEY & FEARON, Attorneys [*2] for Travelers Insurance Companies; Hirman Insurance; Commercial Union Insurance Companies, Syracuse, NY, OF COUNSEL: PAUL G. FERRARA, ESQ., ROBERT J. SMITH, ESQ.

SMITH, SOVIK, KENDRICK & SUGNET, P.C., Attorneys for American States Insurance Co. and Prudential Insurance Co., Syracuse, NY, OF COUNSEL: THOMAS N. KAUFMANN, ESQ.

STEVEN C. YOUNGQUIST, ESQ., Pro Se, Rochester, MN.

THOMAS J. MARONEY, United States Attorney, Attorney for Michael Benson, Postmaster, Northern District of New York, Syracuse, NY, OF COUNSEL: WILLIAM F. LARKIN, Assistant United States Attorney.

GEORGE F. RESTOVICH & ASSOCIATES, Attorneys for George F. Restovich, Esq., Rochester, MN, OF COUNSEL: GEORGE F. RESTOVICH, ESQ.

CONBOY, McKAY, BACHMAN & KENDALL, L.L.P., Attorneys for Western Union, Watertown, NY, OF COUNSEL: GEORGE K. MYRUS, ESQ.

RICHARD MAKI, Pro Se, Rochester, MN.

**JUDGES:** ROSEMARY S. POOLER, UNITED STATES DISTRICT JUDGE

**OPINION BY:** ROSEMARY S. POOLER

**OPINION**

*MEMORANDUM-DECISION AND ORDER*

**INTRODUCTION**

In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received [*3] entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte* the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

**BACKGROUND**

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. [*4] Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also [*5] adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint

on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, [*6] it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March [*7] 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

> 2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved

for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

> 3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

[*8] The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or *Rule 12 of the Federal Rules of Civil Procedure*. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to *Fed. R. Civ. P. 12(b)* or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson [*9] and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to

Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. [*10] Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

> 4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against nonmoving defendants for failure to state a claim on which relief can be granted.
>
> 5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

[*11] Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. [HN1] Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. *Fed. R. Civ. P. 4(e)(2).* Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. *Fed.* [*12] *R. Civ. P.*

*4(e)(1).* [HN2] Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. *Fed. R. Civ. P. 4(h)(1) and 4(e)(1).* [HN3] Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See N.Y. Civ. Prac. L. & R. §§ 308, 311* (McKinney Supp. 1995); *N.Y. Bus. Corp. Law § 306* (McKinney Supp. 1995); *Minn. Stat. § 543.08* (1995); Minn. R. 4.03 (1995). Finally, [HN4] service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. *Fed. R. Civ. P. 4(j)(2).* Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. [*13] R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

In addition to raising various [*14] other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County,

Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. [HN5] Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant [*15] is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to *Rule 14* or *Rule 19 of the Federal Rules of Civil Procedure* and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal long-arm statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. *Fed. R. Civ. P. 4(k)*. Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to *Rule 14* or *Rule 19*. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to *Rule 4(k). See N.Y. Civ. Prac. L. & R. § 302* (McKinney Supp. 1995). [HN6] This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain [*16] minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id. § 302(a)*. The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of *Section 302(a)*. Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

## B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by *Fed. R. Civ. P. 8(a)(1)*. Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The

state defendants, relying on *District of Columbia Court of Appeals v. Feldman*, argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff [*17] was a party. *District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983)*. These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. *28 U.S.C. § 1332*. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's [*18] address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under *28 U.S.C. § 1367(a). Section 1367(a)* [HN7] requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

> [6]   We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. *28 U.S.C. § 1332(a)*. However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id. § 1332(a)(2)*. Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of *28 U.S.C. §*

*1603*. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See 28 U.S.C. § 1330*. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under *Section 1332. Cf. Hiram Walker & Sons, Inc. v. Kirk Line, 877 F.2d 1508, 1511-1512 (11th Cir. 1989), cert. denied, 131 L. Ed. 2d 219, 115 S. Ct. 1362 (1995)* (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under *28 U.S.C. § 1332*.

[*19] We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. [*20] The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

[HN8] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

*28 U.S.C. § 1391(a). Section 1391(b)* provides that federal question actions, except as otherwise provided by law, may be brought only in

[HN9] (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

[*21] *Id. § 1391(b)*. The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. [HN10] Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id. § 1406(a)*. Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. [HN11] The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993)* (holding that it was an improper exercise of discretion to dismiss rather than transfer [*22] when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United

States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).* [7] [HN12] We already [*23] have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the *Rule 12(b)(6)* issue only on ASI's motion. *See Bell v. Hood, 327 U.S. 678, 682-83, 90 L. Ed. 939, 66 S. Ct. 773 (1946)* (subject matter jurisdiction); *Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)* (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

> 7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other [*24] defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. [HN13] Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation [*25]

of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).* [HN14] A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)* (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr, 810 F.2d at 363.*

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not [*26] pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to [*27] amend her pleading and plaintiff still was not able to offer specifics. [9] [HN15] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White, 886 F.2d 721, 724 (4th Cir. 1989)).* We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

> 8    Former Supreme Court Justice Harry A. Blackmun.
> 9    We note also that plaintiff has not requested leave to amend in this action.

We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. § 1915(d)*, holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. [*28] [HN16] The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989).* The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id. at 329 n.8.* The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993), aff'd 41 F.3d 1500 (2d Cir. 1994); cf. Pillay v. I.N.S., 45 F.3d 14, 17 (2d Cir. 1995) (per curiam)* (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts [*29] and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler, 151 F.R.D. at 540.*

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture, 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991).* Moreover, her litigiousness has not yet reached the point

at which courts in this circuit have justified injunctive relief. *See id. at 694* (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants [*30] on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id. at 695.*

## CONCLUSION

All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188-9 (5th Cir. 1986)* (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co., 377 F.2d 194, 199 n.3 (2d Cir. 1967)* (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir.) cert. denied, 322 U.S. 740, 88 L. Ed. 1573, 64 S. Ct. 1057 (1944)* (dismissal for lack of personal jurisdiction is not [*31] a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

DATE: May 22, 1995

Syracuse, New York

ROSEMARY S. POOLER

UNITED STATES DISTRICT JUDGE